# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

        v.

JOSE DELAMORA,
        *Defendant-Appellee.*

No. 05-50589

D.C. No.
CR-87-00119-RMT-
01

OPINION

Appeal from the United States District Court
for the Central District of California
Robert M. Takasugi, District Judge, Presiding

Argued and Submitted
May 5, 2006—Pasadena, California

Filed June 22, 2006

Before: Donald P. Lay,* Barry G. Silverman, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Silverman

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

6957

## COUNSEL

Debra Wong Yang, United States Attorney; Thomas P. O'Brien, Assistant United States Attorney, Chief, Criminal Division; Michael J. Raphael, Assistant United States Attorney, Deputy Chief, Criminal Appeals Section, Los Angeles, California.

Maria E. Stratton, Federal Public Defender; Davina T. Chen, Deputy Federal Public Defender, Los Angeles, California.

---

## OPINION

SILVERMAN, Circuit Judge:

We hold today that a defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities. Accordingly, the district court in this case had jurisdiction to conduct revocation proceedings because a sworn petition to revoke was filed before the term of supervised release, as tolled, had expired.

## I. FACTS AND PROCEDURAL BACKGROUND

In April 1987, Jose Delamora was convicted on all counts of a nine-count indictment relating to his participation in a cocaine trafficking ring. Delamora's conviction occurred during the "window period" between the effective date of two federal statutes that govern post-confinement monitoring of drug offenders. Before the Anti-Drug Abuse Act of 1986, some drug offenders, like Delamora, were eligible for parole, but would have to serve an additional term of "special parole" following their incarceration. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 397-99 (1991). The Anti-Drug Abuse Act replaced special parole with supervised release, *see* Pub. L. No. 99-570, §§ 1002(2), 1004, 100 Stat. 3207 (1986) (codified as amended at 21 U.S.C. § 841(b)(1)(A)), but did not disturb drug offenders' eligibility for parole. The Sentencing Reform Act, effective November 1, 1987, *after* Delamora's conviction, abolished probation and all forms of parole and imposed a unified system of supervised release for all federal crimes. *See* Pub. L. No. 98-473, tit. II, § 212(a)(2), 98 Stat. 1837 (1984) (codified as amended at 18 U.S.C. § 3583).[1]

---

[1]The Sentencing Reform Act was passed before the Anti-Drug Abuse Act, but it did not become effective until one year after the Anti-Drug Abuse Act took effect.

The district court sentenced Delamora to 10 years' imprisonment, and ordered that Delamora was parole-eligible upon serving one-third of his 10-year sentence. In accordance with the Anti-Drug Abuse Act, it also ordered that Delamora was to serve eight years of supervised release.

Delamora was released on parole on November 14, 1990. He was discharged from parole on May 17, 1996. On February 20, 1998, his probation officer filed an unsworn petition in the district court, alleging that Delamora had violated the conditions of his supervised release by not reporting to him since December 1997 and by not submitting monthly reports since November 1997. The probation officer also alleged that the INS, which possessed a Warrant of Deportation for Delamora, could not locate Delamora at his residence or workplace, and that Delamora told him that he was planning to return to Mexico permanently. On February 23, 1998, the district court issued a warrant for Delamora's arrest.

Delamora, however, did not permanently return to Mexico. On April 20, 2000, he applied for a California driver's license under the name "Joe Macias." Five years later, on February 8, 2005, police in Gardena, California arrested him on suspicion of drug possession. Delamora was released, but on March 8, 2005, the Gardena police discovered Delamora's true identity. On March 28, 2005, the Gardena police also charged Delamora with making false statements to the California Motor Vehicles Division.

That same day, a United States Probation Officer filed a petition for revocation of Delamora's supervised release, this time based on a *sworn* declaration. Specifically, the Probation Officer averred that he had "reviewed the Court file [and] the attached Petition dated February 20, 1998," and that "the statements contained in the petition [we]re true and correct to the best of [his] knowledge." The district court issued another warrant for Delamora's arrest, and on April 21, 2005, one day after his arrest, Delamora appeared before the district court.

The district court dismissed the petition. It relied on our decision in *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), in which we held that jurisdiction to revoke supervised release can extend beyond the term of supervision only if a warrant supported by affirmation was issued during the initial term. *Id.* at 907. The district court concluded that it lacked jurisdiction, reasoning that Delamora's supervised release term expired on May 16, 2004, eight years after he was discharged from parole and ten months before the Government filed its sworn petition.

The Government timely appealed.

## II.  ANALYSIS

**[1]** The district court correctly concluded that, under *Vargas-Amaya*, the February 23, 1998 bench warrant — which was based on unsworn allegations — did not preserve its jurisdiction. The March 28, 2005 warrant was based on sworn allegations, but it was issued well *after* Delamora's supervised release term would have expired in the absence of tolling. Thus, the district court had jurisdiction to revoke Delamora's supervision release only if tolling prevented his supervised release term from expiring.

After the district court dismissed the Government's petition, we decided *United States v. Murguia-Oliveros*, 421 F.3d 951 (9th Cir. 2005). Murguia-Oliveros was convicted of illegal reentry after deportation, and after his release from prison, he absconded from supervision. *Id.* at 952. Before his supervised release term was set to expire in September 2004, he was arrested on unrelated charges, which prompted his probation officer to instruct him to report. *Id.* Murguia-Oliveros never did contact his probation officer, and in January 2004, the district court issued a bench warrant supported by unsworn allegations. *Id.* Murguia-Oliveros was arrested in November 2004, two months after his supervised release term

was set to expire. *Id*. at 953. The district court assumed jurisdiction and revoked supervised release. *Id*.

**[2]** We affirmed. We concluded that Murguia-Oliveros was a "fugitive" because he "effectively absconded from serving the terms of his supervised release" by reentering the United States and not contacting his probation officer. *Id*. at 954 (relying on *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992) (tolling is appropriate where defendant was a "fugitive" because he stopped serving the conditions of his supervised release by leaving the community treatment center where he was ordered to serve his term)). We then concluded that Murguia-Oliveros's supervised release term was tolled for eight months, from issuance of the bench warrant in January 2004 to September 2004, when his term was set to expire. *Id.* at 955 ("Murguia-Oliveros was a fugitive for purposes of supervised release at least from the time the government obtained a warrant for his arrest, in January of 2004, until the time the supervised release would have expired, absent a violation, in September of 2004."). Thus, the district court properly assumed jurisdiction because Murguia-Oliveros was arrested in November 2004, "well within the tolling period." *Id*.

**[3]** Delamora argues that *Murguia-Oliveros* permits tolling of his supervised release term only from the date the arrest warrant was issued until the date his term would have expired absent a violation, regardless of the fact that he absconded from supervision. We reject that argument. Tolling of a supervised release term extends the date the term is set to expire so long as the defendant remains a fugitive. "To hold otherwise here would reward those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release." *Crane*, 979 F.2d at 691.[2] As

---

[2]In *Crane*, the defendant's term of supervision was set to expire on May 2, 1991, but he was a fugitive from September 1990 to December 1990, and was incarcerated on unrelated state charges from December 1990 to

we recognized in *Murguia-Oliveros*, "[t]olling is necessary to prevent this result." 421 F.3d at 954.

**[4]** Delamora became a fugitive when he stopped reporting to his probation officer and absconded from supervision. Under *Murguia-Oliveros*, the start of Delamora's flight, which corresponds with the February 23, 1998 bench warrant, commenced the tolling of his supervised release term. On that date, he had 265 days of supervision remaining before his term would have otherwise expired on November 14, 1998, because his supervised release term began when he was released from prison on November 14, 1990.[3] Delamora was brought into federal custody on April 20, 2005, at which point the clock began running again. Delamora's supervised release term, then, did not actually expire until December 10, 2005, or 265 days from April 20, 2005. Because the Probation Department filed its petition to revoke supervised release on March 28, 2005, the district court had jurisdiction.

Delamora argues that by tolling his supervised release term for more than seven years, we are affording invalid warrants

---

May 9, 1991. 979 F.2d at 691. Even though his original term had expired, we held that the term of supervised release was tolled for the period of his fugitive status, and that the district court retained jurisdiction to revoke supervised release. *Id.*

[3]We join the Third, Fifth and Tenth Circuits in deciding that, for defendants sentenced during the "window period" between passage of the Anti-Drug Abuse Act and the effective date of the Sentencing Reform Act, the term of supervised release begins on the day they are released from imprisonment, not the day their parole period ends. *See United States v. Cook*, 329 F.3d 335, 338 (3d Cir. 2003); *United States v. Lynch*, 114 F.3d 61, 63-64 (5th Cir. 1997); *United States v. Reider*, 103 F.3d 99, 101-02 (10th Cir. 1996). In doing so, we follow the clear direction of Congress, *see* 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment . . . ."), and the Supreme Court's guidance that we look to the Sentencing Reform Act when interpreting "supervised release" imposed pursuant to the Anti-Drug Abuse Act. *Gozlon-Peretz*, 498 U.S. at 407-08.

(i.e., those based on unsworn allegations) more force than valid warrants. Not so. What tolls the time is Delamora's fugitive status, not the invalid warrant. In this case, Delamora's status as an absconder happens to coincide with the date of the unsworn petition as it did in *Murguia-Oliveros*, and often might.

**[5]** Finally, we disagree with Delamora that the district court lacked authority under the Anti-Drug Abuse Act to revoke his supervised release. Although the Anti-Drug Abuse Act does not expressly provide for revocation, such authority is necessarily implied in the district court's authority to *impose* supervised release in the first place. *See* Pub. L. 99-570, 100 Stat. 3207 (codified at 21 U.S.C. § 841(b)(1)). We do not believe that Congress would have authorized a system of post-confinement monitoring in an exercise of futility.

**[6]** Moreover, the Supreme Court has said that the term "supervised release" in the Anti-Drug Abuse Act should be interpreted with reference to the Sentencing Reform Act. *See Gozlon-Peretz*, 498 U.S. at 408 ("The reasonable assumption is that when Congress adopted the ADAA and used the term 'supervised release' it knew of the full definition in the existing Sentencing Reform Act and legislated with reference to it."). Thus, because the Sentencing Reform Act grants revocation authority to the district court, we conclude that the district court has the same authority when adjudicating violations of supervised release under the Anti-Drug Abuse Act.

**[7]** For the same reason, we reject Delamora's argument that applying the revocation provision would violate the Ex Post Facto Clause. The revocation provision, 18 U.S.C. § 3583(e), was part of the "full definition" of supervised release that the Anti-Drug Abuse Act incorporated by reference. *Id.* Since supervised release may be imposed against those convicted during the "window period" without triggering constitutional concerns, *see id.* at 407-09, revocation for

violating the terms of supervised release is also constitution-
ally permissible.

## CONCLUSION

For the reasons set forth above, we reverse the district
court's order dismissing the petition for revocation, and
remand to the district court for further proceedings.

**REVERSED.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.