# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　v.

MANUEL IGNACIO JUAREZ,
　　　　　*Defendant-Appellant.*

No. 09-50323

D.C. No.
2:89-cr-00381-
GHK-1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
February 5, 2010—Pasadena, California

Filed April 8, 2010

Before: Mary M. Schroeder, Raymond C. Fisher and
N. Randy Smith, Circuit Judges.

Per Curiam Opinion

**COUNSEL**

Amber D. Garza and Michael J. Raphael (argued), Los Angeles, California, for plaintiff-appellee United States of America.

Gia Kim, Los Angeles, California, for defendant-appellant Manuel Ignacio Juarez.

**OPINION**

PER CURIAM:

Manuel Ignacio Juarez appeals the district court's judgment revoking his supervised release and sentencing him to eighteen months in prison. Juarez contends the district court lacked jurisdiction to revoke his supervised release because his term of supervision expired before the district court either entered the order of revocation or issued a bench warrant that could have extended the court's jurisdiction to do so under 18 U.S.C. § 3583(i). The district court determined that it had jurisdiction to revoke Juarez's supervised release because his

term of supervision was tolled during the period of time he was at large, after he absconded from supervision by changing his residence and not reporting it to his probation officer as required by the conditions of his supervised release. We hold that the district court did have jurisdiction and affirm in a published opinion to clarify that fugitive tolling of a defendant's term of supervised release begins when the defendant becomes a fugitive, not at the later time when a warrant is issued for his apprehension.

## BACKGROUND

The facts of this case are important to our resolution of the jurisdictional question. Juarez pled guilty to bank robbery in 1989. The district court sentenced him to forty-six months in prison, to be followed by three years of supervised release. Under the conditions of Juarez's supervised release, he was required to notify his probation officer within seventy-two hours of any change in residence, and he was prohibited from possessing drugs or drug paraphernalia or committing any further crimes.

On August 26, 1992, the Bureau of Prisons released Juarez into the custody of the Immigration and Naturalization Service ("INS") for deportation, and the Probation Office placed his case on "inactive" status. When the INS deported Juarez to Mexico, his supervised release was scheduled to terminate on August 25, 1995.

Sometime after his deportation, however, Juarez illegally reentered the United States. He did not inform his probation officer that he had reentered or that he had changed residences. On August 31, 1993, he applied for and received a California driver's license under a false name. The license stated his residence to be at an address in Riverside, California.

In November 1994, California law enforcement authorities arrested Juarez for possession of drug paraphernalia. Juarez

identified himself using the false name on his driver's license and was released the same day. Juarez was again arrested by state authorities on June 23, 1995, and charged with two separate counts of robbery. This time, he remained in state custody pending resolution of the charges. Juarez eventually pled guilty to both robbery charges, and on October 4, 1996, he was sentenced to a cumulative term of fifteen years in state prison.

Juarez's illegal reentry and his two arrests all occurred before his supervised release was scheduled to terminate. Under 18 U.S.C. § 3583(i), the district court's authority to revoke a term of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." Accordingly, Juarez's probation officer applied to the district court in July 1995 for a bench warrant authorizing Juarez's arrest for violating the conditions of his supervised release by illegally reentering the United States, by using drugs, and by failing to report his whereabouts to his probation officer. That warrant application was filed within the term of supervised release, but was not supported by an affidavit or any sworn facts. The district court issued a bench warrant on July 17, 1995, but it was not immediately executed because Juarez by that time was in state custody pending the resolution of the two robbery charges.

In November 2004, this court decided *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004). We held that a district court's jurisdiction to revoke supervised release can be extended beyond the term of supervision under § 3583(i) on the basis of a warrant issued during the term of supervision, but "only if the warrant was issued 'upon probable cause, supported by Oath or affirmation,' as required by the Fourth Amendment." *Id.* at 907. When Juarez's probation officer recognized that the initial warrant issued by the district court for

Juarez's arrest did not comply with *Vargas-Amaya*, he applied for a new warrant. This time, he included a sworn statement of facts in support of the application and alleged two new violations of Juarez's release conditions, on account of Juarez's two robbery convictions. On May 3, 2005, the district court issued a new bench warrant for Juarez's arrest. This warrant also could not be immediately executed, however, because Juarez was still serving his state prison sentences for the robbery convictions.

Almost four years later, on February 10, 2009, Juarez was paroled from state prison and transferred to federal custody pursuant to the 2005 bench warrant. He promptly moved to dismiss the petition to revoke his supervised release. He argued that because the 2005 warrant had been issued nearly ten years after his original term of supervision was to expire, the district court lacked jurisdiction to revoke his supervised release under 18 U.S.C. § 3583(i).

The district court denied Juarez's motion. The court ruled that his fugitive status tolled the term of supervised release for close to two years, and that because the term as tolled by fugitive status was again tolled by reason of his state prison sentences, the court had jurisdiction to revoke his supervised release. The district court explained its reasoning as follows.

First, when Juarez applied for a California driver's license on August 31, 1993, he effectively admitted he had changed his residence from Mexico to Riverside, California. Juarez did not report this change in residence to the Probation Office within seventy-two hours as required by the conditions of his supervised release. Therefore, the district court found that Juarez had absconded from supervision and become a fugitive "on or about August 31, 1993, or within 72 hours thereof." This is because Juarez's reentry into the United States triggered reinstatement of the terms of his supervision, which Juarez then violated "in such a way as to disable the probation officer from knowing his whereabouts and being able to begin

supervision." Thus, because Juarez was a fugitive until his arrest on June 23, 1995, the running of his term of supervised release was tolled for nearly two years.

Second, on October 3, 1996, during the extended period of supervised release, Juarez's term of supervision was again tolled as a result of his incarceration for his two robbery convictions. *See* 18 U.S.C. § 3624(e) ("A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."). Because the May 2005 bench warrant was issued while Juarez was still serving his prison sentences for the two robbery convictions, and thus before the extended term of supervised release expired, the district court held it had jurisdiction to revoke Juarez's term of supervised release under § 3583(i).

On June 8, 2009, Juarez admitted to the violations of release conditions alleged by the government. The court revoked his supervised release on July 15, 2009, and sentenced him to eighteen months in prison. Juarez timely appealed the district court's judgment to this court. He contends that the district court lacked jurisdiction to revoke his supervised release because its term was not tolled by his nearly two-year status as a fugitive and had therefore expired. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

We review de novo whether the district court had jurisdiction to revoke a term of supervised release. *United States v. Sullivan*, 504 F.3d 969, 971 (9th Cir. 2007). The fugitive tolling issue is an issue of law, and there are no factual disputes as to when the dispositive events occurred in this case.

Juarez argues that our case law establishes that fugitive tolling cannot begin until the government has information

concerning a defendant's whereabouts and obtains an arrest warrant. In this case that occurred in July 1995, so the term, Juarez asserts, was not tolled during the first two years he was actually a fugitive. There is no question that the term can be tolled during the years Juarez was incarcerated for the two robbery convictions, *see* 18 U.S.C. § 3624(e), but unless it was first tolled during the two years that he was a fugitive, the district court lacked jurisdiction. This is because the term of supervision would have expired before his incarceration.

The district court held, however, that Juarez's fugitive status began in 1993, when we know he had become a fugitive from supervision. We agree with the district court, because we conclude that our case law establishes that fugitive tolling begins with fugitive status and not when the government is able to secure a warrant. This is apparent from a careful review of our cases.

We first recognized that a defendant's term of supervised release is tolled for fugitive status in *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992). In that case, the defendant absconded from a community treatment center where he was serving a one-year term of supervised release. *Id.* at 688. The defendant's probation officer immediately filed a petition for revocation of supervised release, and the district court issued a warrant for the defendant's arrest. *Id.* Three months later, state law enforcement authorities arrested the defendant and held him in state custody until after his term of supervised release would have expired, absent tolling. *Id.* at 688, 691. We held that the district court retained jurisdiction to revoke the defendant's supervised release because his term of supervision was tolled for the three months he remained a fugitive after leaving the community treatment center. *Id.* at 691.

In *United States v. Murguia-Oliveros*, 421 F.3d 951, 953-54 (9th Cir. 2005), we reaffirmed our holding in *Crane* and clarified that a defendant becomes a fugitive for purposes of tolling when he absconds from his supervised release. The

defendant in *Murguia-Oliveros* violated the conditions of his supervised release by reentering the United States after being deported and not reporting to his probation officer. *Id.* at 952. The probation officer later learned of the defendant's reentry and sent a letter to his last-known address instructing him to report. *Id.* When the defendant failed to report, the district court issued a bench warrant for his arrest, but it was not based on any sworn statement of fact. *Id.* Ten months after the warrant issued and approximately two months after his term of supervised release would normally have expired, the defendant was arrested and the district court revoked his supervised release. *Id.* at 953. We held that the district court had jurisdiction because the defendant was a fugitive from supervised release "at least from the time the government obtained a warrant for his arrest . . . until the time the supervised release would have expired, absent a violation"—a period of eight months. *Id.* at 955. Because this eight-month period of tolling was more than sufficient to extend the term beyond the time when the court revoked the defendant's supervised release, we did not have to decide whether tolling actually began with the defendant's initial failure to report to his probation officer.

**[1]** Building on these precedents, however, we said clearly in *United States v. Delamora*, 451 F.3d 977, 978 (9th Cir. 2006), that "a defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities." In that case, the defendant's probation officer filed an unsworn petition in the district court alleging the defendant had violated the conditions of his supervised release by not reporting to the probation officer for two months and not submitting monthly reports for three months. *Id.* at 979. The probation officer also asserted that the defendant could not be located. *Id.* The district court issued a warrant for the defendant's arrest. *Id.* More than seven years later, the district court issued a second warrant, this time based on sworn facts, and the defendant was arrested within a month. *Id.* Because the second warrant was not issued until after the defendant's term of supervision was

originally scheduled to expire, the district court ultimately dismissed the petition for lack of jurisdiction. *Id.*

**[2]** On appeal, however, we reversed, holding that the district court had jurisdiction to revoke the defendant's supervised release because the defendant's fugitive status had tolled the running of his term of supervision, so that the term extended beyond the original expiration date. *Id.* at 979-81. In so holding, we rejected the defendant's argument that *Murguia-Oliveros* permitted tolling of a defendant's term of supervised release only from the date an arrest warrant issues until the date the defendant's term would expire absent a violation. *Id.* at 980. We explained in *Delamora* that "[t]olling of a supervised release term extends the date the term is set to expire so long as the defendant remains a fugitive." *Id.* Thus, we stated that the defendant in *Delamora* "became a fugitive when he stopped reporting to his probation officer and absconded from supervision," and that "the start of [the defendant's] flight . . . commenced the tolling of his supervised release term." *Id.* Once the defendant was arrested and brought into federal custody, tolling ceased and "the clock began running again." *Id.* at 980-81. Accordingly, we held that "[w]hat tolls the time is [the defendant's] fugitive status, not the [bench] warrant." *Id.* at 981.

Although our holding in *Delamora* was clear, we apparently actually calculated the number of days to be tolled from the date of the issuance of the initial bench warrant. *Id.* at 980. Juarez thus focuses only upon that and argues that tolling should not begin in his case until the July 1995 bench warrant was issued, thus in effect claiming that the term of supervised release continued to run during the time in which he was a fugitive. His argument is contrary to our holding in *Delamora*.

**[3]** A close reading of *Delamora* reveals that we used the bench warrant as the starting point for tolling because it was the earliest ascertainable date when we knew the defendant

had become a fugitive. We said: "Delamora's status as an absconder happens to coincide with the date of the unsworn petition as it did in *Murguia-Oliveros*, and often might." *Id.* at 981. Thus, because the only known date to start the defendant's flight in *Delamora*, as in *Murguia-Oliveros*, corresponded with the issuance of the first bench warrant, we calculated the tolling period as beginning on that date. *Id.* at 980. But this does not mean, as Juarez tries to argue, that in a case in which we know that the defendant was a fugitive at an earlier date, we must still hold that the defendant's term of supervised release continues to run and is not tolled until a bench warrant is issued. Such a result would run counter to one of the primary principles on which the fugitive tolling doctrine rests: "[a] person on supervised release should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he [has absconded from] supervised release." *Murguia-Oliveros*, 421 F.3d at 954.

**[4]** Fugitive tolling begins when the defendant absconds from supervision—making it impossible for the Probation Office to supervise his actions—and ends when federal authorities are capable of resuming supervision. *See Delamora*, 451 F.3d at 978 ("[A] defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities."). In this case, Juarez absconded from supervision when he moved to the United States and failed to advise the Probation Office of his whereabouts. We know that he was residing in the United States no later than August 31, 1993, and that he failed to report his change of address to the Probation Office within 72 hours. Thus, tolling began at the latest on September 3, 1993. Fugitive tolling ended on June 23, 1995, when Juarez was arrested by California law enforcement authorities and federal authorities became aware of his whereabouts. This tolling, coupled with the undisputed tolling during his prison terms, extended Juarez's term of supervised release by more than fourteen years, so that his term of supervision would not have

expired until October 21, 2009. The district court correctly ruled it had jurisdiction to revoke the supervised release well before that date.

**AFFIRMED.**