**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

KENNETH EDWARD WATSON, JR.,
           *Defendant-Appellant.*

No. 09-50666

D.C. No.
2:96-cr-00115-
RSWL-1

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Submitted November 4, 2010*
Pasadena, California

Filed February 23, 2011

Before: Johnnie B. Rawlinson and Milan D. Smith, Jr.,
Circuit Judges, and Robert C. Jones, District Judge.**

Opinion by Judge Milan D. Smith, Jr.

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert C. Jones, United States District Judge for the District of Nevada, sitting by designation.

## COUNSEL

Ami Sheth, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

## OPINION

M. SMITH, Circuit Judge:

Kenneth Edward Watson, Jr., appeals the district court's decision revoking his supervised release and sentencing him to three years in prison. Watson, whose original term of supervision was to expire in 1997, concedes that he became a fugitive from federal supervision in October 1995, when he failed to notify his probation officer of his change in residence and stopped submitting required monthly reports. He argues, however, that his eleven arrests by state authorities in Minnesota between 1996 and 2007 marked the end of his fugitive status. Absent fugitive tolling, he contends, his term of supervision ended long before federal authorities arrested him in

2009, and the district court was without jurisdiction to revoke his supervised release.

We hold that Watson's arrests by state authorities neither support an inference that federal authorities had actual knowledge of his presence nor impute constructive knowledge to them. Watson's term of supervision therefore was tolled until federal authorities arrested him in 2009. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 1989, Watson pleaded guilty in the Northern District of West Virginia to possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and was sentenced to sixty-three months in prison, followed by a four-year term of supervised release. His term of supervised release began on September 3, 1993, and was set to expire on September 2, 1997. As a condition of his supervised release, Watson was required to notify his probation officer within seventy-two hours of any change in residence, and to submit written monthly reports.

On January 29, 1996, U.S. Probation Officer Ronald J. McPherson requested that the district court transfer jurisdiction over Watson's supervision to the Central District of California and issue a warrant for Watson's arrest. Officer McPherson's unsworn petition alleged that Watson had violated his supervised release by failing to notify his probation officer of his change of residence or to submit monthly reports after October 1995. On February 6, 1996, the district court granted the transfer request, signed the petition, and issued a bench warrant for Watson's arrest.

On May 5, 2005, U.S. Probation Officer Graciela Gudino, née Corral, submitted a sworn declaration reaffirming the petition and requesting a new bench warrant. Officer Gudino's declaration explained that under our intervening decision in *United States v. Vargas-Amaya*, 389 F.3d 901 (9th

Cir. 2004), the previous warrant was invalid because it was not supported by a sworn affidavit. The district court issued a new bench warrant, and on September 18, 2009, federal authorities arrested Watson in McAllen, Texas.

At the preliminary revocation hearing, Watson denied the allegations in the petition, and the district court set the matter for an evidentiary hearing. While preparing for that hearing, Officer Gudino learned that Watson had been arrested for state crimes in Minnesota eleven times between 1996 and 2007 and that there were three outstanding state warrants for his arrest.

At the evidentiary hearing, Watson testified that he moved to Minnesota sometime in 1995. He stated that he talked to a person at the probation office in California about his plan to move to Minnesota, although he did not know if he talked to a probation officer or a receptionist, and claimed he was told to call the probation office in Minnesota after his relocation. He also asserted that the person "didn't tell me that I didn't have permission" to move. Watson claimed that he called the Minnesota probation office several times, but was told that the office did not have his file, and that Watson should call the California probation office, which he did not do.

Defense counsel argued that Watson was not on fugitive status, that his term of supervised release had expired, and that the district court had no jurisdiction to revoke his supervised release. The court rejected that argument, revoking Watson's supervised release and sentencing him to three years in prison. Watson timely appealed.

## DISCUSSION

We have jurisdiction under 28 U.S.C. § 1291. On de novo review, *United States v. Ignacio Juarez*, 601 F.3d 885, 888 (9th Cir. 2010) (per curiam), we hold that Watson's fugitive status tolled the term of supervised release, and that the dis-

trict court had jurisdiction to revoke the release and sentence Watson to prison.

The district court's authority to revoke a term of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i). In *Vargas-Amaya*, we held that such a warrant must be "issued 'upon probable cause, supported by Oath or affirmation,' as required by the Fourth Amendment." 389 F.3d at 907 (quoting U.S. Const. amend. IV). Here, the first warrant was issued before Watson's term of supervised release was set to expire, but because it was not supported by an affidavit or sworn facts, it could not extend the term of supervision under 18 U.S.C. § 3583(i). Officer Gudino submitted a new warrant application, supported by a sworn declaration, on May 5, 2005, after Watson's term of release was set to expire.

**[1]** A defendant's term of supervised release is tolled, however, when he is in "fugitive status." *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992). A defendant is in fugitive status when he fails to comply with the terms of his supervised release. *United States v. Murguia-Oliveros*, 421 F.3d 951, 953 (9th Cir. 2005). The fugitive tolling doctrine rests on the principle that "[a] person on supervised release should not receive credit against his period of supervised release for time [when], by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release." *Id.* at 954. Where fugitive tolling applies, "a defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities." *United States v. Delamora*, 451 F.3d 977, 978 (9th Cir. 2006); *see also Ignacio Juarez*, 601 F.3d at 890 ("Fugitive tolling begins when the defendant absconds from supervision —making it impossible for the Probation Office to supervise his actions—and ends when federal authorities are capable of

resuming supervision."). "[F]ugitive tolling of a defendant's term of supervised release begins when the defendant becomes a fugitive, not at the later time when a warrant is issued for his apprehension." *Ignacio Juarez*, 601 F.3d at 886.

Watson concedes that he became a fugitive when he failed to notify his probation officer of his change of residence and stopped submitting monthly reports, in October 1995. The question here is whether Watson's fugitive status ended when federal authorities arrested him in 2009, or whether, as Watson contends, his eleven arrests in Minnesota between 1996 and 2007 support an inference that he was "found by federal authorities," *Delamora*, 451 F.3d at 978, or that federal authorities had constructive knowledge of his presence, well before that time.

**[2]** The record supports no such inference. No evidence suggests that federal authorities had actual knowledge of Watson's presence in Minnesota; rather, Officer Gudino testified that she learned about his state convictions only while preparing for the December 17, 2009, evidentiary hearing. Watson's arrests in Minnesota brought him into contact only with state authorities, and his Minnesota convictions were exclusively for state crimes. Nor do Watson's arrests by state authorities justify imputing constructive knowledge to federal authorities. In support of that contention, Watson cites *United States v. Gomez*, 38 F.3d 1031, 1037-38 (8th Cir. 1994), where the Eighth Circuit held that the defendant's conviction for illegal entry into the United States was barred by the five-year statute of limitations because he had provided fingerprints to a federal agency more than five years before he was charged, giving the federal government constructive knowledge of his presence. In *Gomez*, however, the constructive knowledge imputed to the federal government was based on the defendant's contacts with *federal* law enforcement authorities. In contrast, Watson's contacts were exclusively with *state* authorities, and nothing in the record indicates that federal authorities had possession of, or access to, information about

his state arrests. *Accord Delamora*, 451 F.3d at 979-81 (concluding that the defendant's fugitive status ended when he was taken into federal custody, although California state authorities had arrested him on suspicion of drug possession and learned of his true identity earlier).

**[3]** Accordingly, Watson's period of supervised release was tolled until "federal authorities [were] capable of resuming supervision," *Ignacio Juarez*, 601 F.3d at 890, that is, until his September 18, 2009, arrest by federal authorities. We therefore hold that the district court had jurisdiction to revoke his period of supervised release, and to impose a three-year prison sentence.

**AFFIRMED.**