**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50043 |
| Plaintiff - Appellee, | D.C. No. 3:99-cr-00606-GT-1 |
| v. | |
| GABRIEL HUMBERTO GARCIA-OCAMPO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Gordon Thompson, Senior U.S. District Judge, Presiding

Submitted June 7, 2013[**]
San Francisco, California

Before: TALLMAN and N.R. SMITH, Circuit Judges, and BURGESS, District Judge.[***]

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]     The Honorable Timothy M. Burgess, United States District Judge for the District of Alaska, sitting by designation.

Gabriel Humberto Garcia-Ocampo appeals the district court's revocation of his supervised release and his resulting twenty-one month prison sentence. On appeal, Garcia-Ocampo claims that the district court improperly applied the fugitive tolling doctrine to extend his supervised release term, initially scheduled to end on September 6, 2007, until July 22, 2010. Garcia-Ocampo contends that this extension was in error because the government was capable of resuming supervision during this time period. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

The fugitive tolling doctrine applies to extend a defendant's supervised release term, adding additional time to account for any period when the defendant was in "fugitive status." *United States v. Watson*, 633 F.3d 929, 931 (9th Cir. 2011). "A defendant is in fugitive status when he fails to comply with the terms of his supervised release." *Id*. Garcia-Ocampo concedes that he became a fugitive on or before August 15, 2007, when he violated his supervised release conditions by reentering the United States after being deported and failing to report to his probation officer within twenty-four hours of reentry.

However, Garcia-Ocampo contends that his status as a fugitive ended on August 29, 2007**,** when the San Diego probation officer received a Criminal History Report from the Chicago Police Department that listed Garcia-Ocampo's

2

last known residential address in Illinois. Garcia-Ocampo had apparently been released from custody in Chicago before a bench warrant could be obtained from a federal judge in San Diego. Once "federal authorities are capable of resuming supervision," fugitive tolling ends and a defendant's supervised release term may not be extended further. *United States v. Ignacio Juarez*, 601 F.3d 885, 890 (9th Cir. 2010); *see also United States v. Delamora*, 451 F.3d 977, 978 (9th Cir. 2006) ("[A] defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities.").

The probation officer's receipt of Garcia-Ocampo's last known Illinois address does not compel the conclusion that federal authorities were capable of resuming supervision. Although there is no evidence that the probation officer provided the deputy marshal with Garcia-Ocampo's last known address, the deputy marshal assigned to execute the federal arrest warrant independently contacted the arresting officer at the Chicago Police Department. The information conveyed to the deputy marshal in this conversation suggested that the last known address listed in the report was invalid. Information provided by the arresting officer, corroborated by the deputy marshal's inability to locate Garcia-Ocampo during his subsequent searches of federal databases, indicated that Garcia-Ocampo was actually homeless during the time period between the issuance and execution of the

3

arrest warrant. As a result, in a declaration submitted to the district court, the deputy marshal stated that:

> Even if [he] was made aware of the residential address listed on the Arrest Report, since Garcia-Ocampo was indicated to most likely be homeless by the arresting Officer, [he] likely would not have requested a Deputy United States Marshal from Chicago check for Garcia-Ocampo at that address unless some other evidence corroborated his likely presence there.

The deputy marshal expended reasonable efforts to locate Garcia-Ocampo, which were unsuccessful, prior to his later arrest in Illinois and, as the district court found, "there [wa]s no evidence in the record that Mr. Garcia was living [at the listed residence] . . during the time in question." Garcia-Ocampo's continuing "wrongful act[ions]," which effectively resulted in him "flee[ing] from bench warrants and maintain[ing] [his] . . . fugitive status until the expiration of [his] . . . original term of supervised release," are to blame for any delay in effectuating his ultimate arrest in 2010. *United States v. Murguia-Oliveros*, 421 F.3d 951, 953–54 (9th Cir. 2005) (internal quotation marks omitted). As a result, we conclude that federal authorities were incapable of resuming supervision until Garcia-Ocampo was again arrested on June 30, 2010, two years and nine months after his supervised release term was originally scheduled to have expired. The district

4

court correctly held it had jurisdiction to revoke Garcia-Ocampo's supervised

release and to impose a twenty-one month prison sentence.

**AFFIRMED.**