**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4100**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PHILLIP JAZIR THOMPSON, a/k/a Dashawn Andre Saunders, a/k/a Phillip Thompson, a/k/a Jonathan Bellamy,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:03-cr-00420-HEH-1)

Argued: January 31, 2019                                    Decided: May 10, 2019

Before GREGORY, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Aidan Taft Grano, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Nia A. Vidal, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Phillip Jazir Thompson, a native of Jamaica, was sentenced to a five-year term of supervised release. A special condition of that release prohibited Thompson, once deported, from returning to the United States without permission and required, if he did reenter, that Thompson report promptly to probation. Six months before his supervised release term was to end in June of 2015, Thompson returned to the United States without permission, did not report to probation, and instead used an alias to avoid detection for several years.

When Thompson finally was apprehended in 2017 and charged with violating the conditions of his supervised release, he argued that the government was too late: Because his five-year supervised release term had expired in 2015, the district court was without jurisdiction to sanction any violations. The district court disagreed, holding that the term of Thompson's supervised release was tolled when Thompson became a fugitive, actively concealing himself from probation while residing in the United States. The court went on to sentence Thompson to 30 months' imprisonment for violations of his supervised release conditions.

On the main issue presented by this appeal, we agree with the district court: The doctrine of fugitive tolling applies in this case, extending the period of time during which the district court was authorized to sanction Thompson's violations. Questions remain, however, about the precise duration of that tolling, and whether the fugitive tolling doctrine or some other legal provision authorized the district court to impose sanctions in

2

January of 2018. Accordingly, we vacate the district court's supervised release order and remand for further proceedings.

## I.

## A.

At the heart of this case is a five-year term of supervised release to which Phillip Jazir Thompson was sentenced in 2004, after pleading guilty to drug and weapons charges. The term began on June 16, 2010, when Thompson completed a 180-month prison sentence on the same charges, and was to expire on June 16, 2015.

Approximately two weeks after the start of his supervised release term, Thompson, a citizen of Jamaica, was deported. Under a special condition of his supervised release, Thompson could not return to the United States for the remainder of his term without the express permission of the Attorney General. So long as he remained outside the country, Thompson had no reporting obligations. But if he returned to the United States for any reason, then Thompson was required "to report to the nearest United States Probation Office within 72 hours of arrival." J.A. 15.

On two separate occasions and notwithstanding that special condition, Thompson reentered the United States without permission. First, on April 16, 2011 – ten months after his supervised release term began – Thompson was taken into custody in California. A little over a month later, on May 25, 2011, Thompson was deported for a second time. Thompson's probation officer subsequently filed a petition in July of 2011, alleging that Thompson had violated his supervised release conditions – both a mandatory condition

3

prohibiting the commission of any crime (here, the offense of illegal reentry after being deported) and the special condition prohibiting reentry without permission. Based on that petition, the district court entered a warrant for Thompson's arrest.

By December of 2014 – six months before Thompson's supervised release term was to end in June of 2015 – Thompson had returned to the United States for a second time. As law enforcement agents later learned, while in the United States under an assumed name, Thompson was organizing marijuana shipments from California to Virginia and routing payments for those shipments through various bank accounts. What Thompson was not doing was reporting to probation: Despite knowing of the special condition of his supervised release, Thompson never informed probation that he was in the United States.

Because Thompson was using an alias, law enforcement agents were unable to locate him until June of 2017, when they arrested him in Florida. By then, the date on which Thompson's supervised release term was due to expire – June 16, 2015 – had come and gone. Thompson's probation officer nevertheless filed an addendum to her earlier supervised release petition, in September of 2017, alleging that Thompson again had violated the mandatory condition against commission of a crime, this time by engaging in drug and money laundering offenses as well as by illegally reentering the country.

**B.**

In January of 2018, the district court convened a hearing to consider the supervised release violations alleged in the July 2011 petition and September 2017

4

addendum. Before the court could reach the merits, however, Thompson challenged its jurisdiction. District courts, as Thompson noted, generally do not have jurisdiction to sanction supervised release violations once a supervised release term has expired. *See* 18 U.S.C. § 3583(i) (the power of the court to sanction supervised release violations "extends beyond the expiration of the term of supervised release" only in limited circumstances). And because his term had expired as scheduled on June 16, 2015, Thompson argued, the court could not adjudicate his alleged violations almost three years later, in January of 2018.

The government disagreed, arguing that Thompson's supervised release term in fact had *not* expired in June of 2015. Instead, under the fugitive tolling doctrine recognized by our court in *United States v. Buchanan*, 638 F.3d 448 (4th Cir. 2011), Thompson's five-year term was tolled when Thompson absconded from supervision, returning to the United States but failing to report to probation within 72 hours as required by the conditions of his release.

In support, Officer Timothy Walker of the Richmond Police Department testified that Thompson had returned to the United States no later than December 2014 – six months before his supervised release term was to end in June of 2015 – by which point he was in California, shipping marijuana to Virginia. According to the officer, Thompson had secured a cell phone number and California driver's license under an alias. He also had leased a car, and in August 2016 had started living with his girlfriend, now in Florida. Thompson's probation officer also testified, explaining that Thompson never contacted a probation officer, and that probation learned of his return to the United States

5

only after his arrest in June of 2017. Thompson, for his part, contested none of those facts. Instead, he argued that they were not enough to make him a "fugitive" for purposes of the fugitive tolling doctrine.

Based on this undisputed evidence, the district court held that fugitive tolling applied to Thompson's term of supervised release, extending the court's jurisdiction beyond the original expiration date of June 16, 2015. During his supervised release term, the court found, Thompson "was in the country yet failing to report for supervision," in violation of conditions of which Thompson was fully aware. J.A. 111. And the evidence presented by the government, the court determined – in particular, evidence of Thompson's aliases – was "more than sufficient to support a finding that [Thompson] actively and consciously concealed himself to avoid detection," thus "willfully creat[ing] the circumstances under which he was absent from supervision." *Id.* (internal quotation marks omitted). That was enough, the court concluded, to make "fugitive tolling . . . available to stop the clock on [Thompson's] supervised release" term. J.A. 112 (internal quotation marks omitted).

The court then turned to the question of timing. The precise date on which Thompson reentered the country after his 2011 deportation was "admittedly unclear," the district court explained, *id.*, with some evidence indicating Thompson's presence as early as 2013. That made it "difficult to pinpoint the exact date" on which Thompson could be "deemed to have absconded from supervised release." *Id.* The court ultimately identified December of 2014 as the starting date for tolling, based on Officer Walker's testimony that Thompson had returned to the United States no later than that month. So in

6

December of 2014, with six months to go until Thompson's supervised release term was to end in June of 2015, the "clock stopped" on that term. And it remained stopped, the court explained, through June of 2017 – when Thompson was arrested – and then never restarted, because Thompson never was returned to supervision after his 2017 arrest. Accordingly, the court concluded, Thompson's supervised release term was still in effect, giving the court jurisdiction over Thompson's alleged violations.

After the court rejected Thompson's challenge to its jurisdiction, Thompson admitted to committing the violations alleged in the July 2011 petition and September 2017 addendum. At the close of the hearing – in January of 2018 – the district court revoked Thompson's supervised release term and sentenced him to 30 months' imprisonment. This timely appeal followed.

## II.

The sole question on appeal is whether the district court correctly concluded that it had the authority in January of 2018 to adjudicate alleged violations of a supervised release term that was set to expire in June of 2015. We "review[] de novo whether the district court had jurisdiction to rule upon alleged violations of supervised release." *United States v. Harris*, 878 F.3d 111, 115 (4th Cir. 2017).

We are in substantial agreement with the district court in this case. Specifically, we agree that Thompson's supervised release term was tolled under the fugitive tolling doctrine, extending the court's jurisdiction beyond the original end of Thompson's term in June of 2015. On this record, however, we are unable to determine whether that

7

tolling – or some other legal provision – continued to provide the court with jurisdiction in January of 2018, when Thompson was sanctioned for violations of his supervised release. We therefore remand to the district court so that it may make the findings necessary to resolve that question.

## A.

According to Thompson, the district court's jurisdiction to sanction his supervised release violations expired on June 16, 2015, along with his term of supervised release. As a general rule – and this much is undisputed – a district court's power to revoke a term of supervised release or to sanction violations ends when that term expires. *See* 18 U.S.C. § 3583(i). And here, Thompson argues, there is no ground for extending that expiration date, because he was not a "fugitive" under the fugitive tolling doctrine.[1] Only an active and knowing effort to evade adjudication of a supervised release petition, Thompson contends, is sufficient to trigger the fugitive tolling doctrine, and because he never became aware of the July 2011 petition filed against him – having been deported two months prior, in May – he does not fit the bill. Like the district court, we disagree.

The fugitive tolling doctrine, as we recognized in *Buchanan*, provides that "a term of supervised release is tolled when a defendant absconds from supervision." 638 F.3d at

---

[1] Thompson also argues that *United States v. Buchanan*, 638 F.3d 448 (4th Cir. 2011), in which we recognized the doctrine of fugitive tolling as applied to supervised release sentences, was wrongly decided, and that supervised release sentences never should be tolled on the basis of fugitive status. But as Thompson recognizes, panels of this court are bound by circuit precedent, *United States v. Prince-Oyibo*, 320 F.3d 494, 498 (4th Cir. 2003), and *Buchanan* governs this case.

8

455. That is so, we explained, for two primary reasons, neither of which has anything to do with a defendant's awareness of an outstanding petition against him. First, Congress "inten[ded] . . . defendants to serve their full [supervised] release term." *Id.* When that term includes a supervision requirement – as Thompson's did, once he reentered the United States – then a defendant's fugitive status, by precluding supervision, means that the term is not being served as intended. Tolling addresses that problem by "ensur[ing] that, upon being apprehended, the defendant will be subject to judicial supervision for a complete term." *Id.* at 458. Second, just as an escaped prisoner's sentence is not credited for the time the prisoner spends out of custody, we reasoned, a supervised release term should not be credited for time that a defendant, "by virtue of his own wrongful act," spends out of supervision. *Id.* at 454, 455 (internal quotation marks omitted). Fugitive tolling, in other words, prevents a situation in which we "reward an absconder for his misconduct," allowing a fugitive defendant to run out the clock on his release term while refusing to submit to supervision. *Id.* at 455.

Under that reasoning, as the district court concluded, the fugitive tolling doctrine applies to Thompson. The district court found (and Thompson does not dispute) that "while the originally imposed term of supervision was still running, [Thompson] was in the [United States] yet failing to report for supervision" as required by the conditions of his supervised release. J.A. 111. So Thompson did not – as the district court and Congress intended – serve his full term of supervision under the conditions specified in his judgment of conviction. And that failure to serve the full term was the result of Thompson's own misconduct, in the form of knowingly absconding from supervision:

9

Thompson, as the district court found (and again, Thompson does not dispute), was fully "aware of [the] terms and conditions" of his supervised release and instead of abiding by them, "actively and consciously concealed himself" and used aliases to avoid supervision. *Id.* Those findings are enough, under *Buchanan*, to satisfy the government's burden of showing that the fugitive tolling doctrine applies, *see United States v. Williams*, 520 F. App'x 617, 618 (9th Cir. 2013) ("In the revocation proceedings below, it was the government's burden to prove the facts surrounding both periods of fugitive tolling."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (party asserting jurisdiction bears burden of establishing jurisdiction).

Thompson's contrary position – that only the active and knowing evasion of charges in a pending supervised release petition can trigger fugitive tolling – finds no support in *Buchanan*. Under *Buchanan*, a defendant becomes a fugitive for these purposes when he "absconds from supervision," 638 F.3d at 455; it is the flight from *supervision*, not from a particular petition or charge, that counts. Nor, as Thompson concedes, is there any other court of appeals that has adopted his position. Instead, the Ninth Circuit already has rejected a very similar argument, holding in *United States v. Ignacio Juarez*, 601 F.3d 885 (2010), that a defendant may be a fugitive for tolling purposes even if no warrant against him has issued. It is not the warrant, the Ninth Circuit explained, that triggers tolling; instead, "[f]ugitive tolling begins when the defendant absconds from *supervision* – making it impossible for the Probation Office to supervise his actions." *Id.* at 890 (emphasis added). Applying that standard – the same one adopted in *Buchanan* – the Ninth Circuit held that the defendant, who, like

10

Thompson, had been ordered to report to his probation officer if he reentered the United States, became a fugitive for purposes of tolling when he reentered the United States but refused to submit to supervision. *Id.* at 886, 890.

Thompson argues that his return to the United States in violation of a supervised release condition cannot be enough to make him a "fugitive," and that if it were, every minor supervised release violation would become a basis for fugitive tolling. On this point, we agree with Thompson: A defendant does not become a fugitive for tolling purposes by virtue of missing a meeting with a probation officer, or simply because he violates a condition of supervised release. But that is not what happened here. In applying the fugitive tolling doctrine, the district court did not rely on Thompson's reentry without permission, in violation of his supervised release condition. Nor did the district court label Thompson a fugitive solely because he missed one or even multiple meetings with his probation officer. Instead, the district court found that Thompson had "abscond[ed] from supervision" for several years, J.A. 110 (internal quotation marks omitted), "actively and consciously conceal[ing] himself" through use of aliases and other measures, J.A. 111. It is that sustained and knowing course of conduct, which "precludes the sentencing court from exercising [the] supervision" contemplated by a supervised release term, *Buchanan*, 638 F.3d at 458, that justifies fugitive tolling under *Buchanan*.

## B.

Having held, like the district court, that the fugitive tolling doctrine applies, we next address what turns out to be the more difficult aspect of this case: determining

11

when, exactly, Thompson's supervised release term was tolled, and for how long. Thompson has not challenged the district court's findings with respect to timing, either before the district court or on appeal. But because those findings implicate the court's jurisdiction, we address them here. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). We conclude that the district court erred in identifying the end date for tolling, and thus vacate the district court's order and remand so that the district court may consider other possible bases for jurisdiction in this case.

1.

We begin with the question of when fugitive tolling began – that is, at what point Thompson became a fugitive, so that the clock stopped running on the five-year supervised release term that started on June 16, 2010. As the district court acknowledged, it is unclear when precisely Thompson reentered the country after his 2011 deportation – with some evidence placing him in the United States as early as 2013 – and thus difficult to "pinpoint the exact date" on which Thompson absconded from supervision. J.A. 112. In light of that uncertainty, the district court made a conservative estimate, crediting the testimony of Officer Walker that Thompson had returned to the United States by no later than December of 2014, and found that Thompson became a fugitive by "at least December of 2014," when he was residing in the United States and concealing himself from probation. *Id.*

12

Under the circumstances of this case, we find no error in the district court's conclusion. The burden, again, is on the government to establish facts that justify fugitive tolling. *See Williams*, 520 F. App'x at 618. In light of this burden, we generally expect the government to prove up a more precise date for the start of a fugitive tolling period. That date may often be the date on which a warrant issues for the defendant's arrest based on the defendant's failure to report when instructed to by a probation officer. Or the government may present evidence that the defendant absconded on another determinable date. *Compare Ignacio Juarez*, 601 F.3d at 890 (noting that the date on which a bench warrant for an absconder is issued "often might" coincide with the date on which a defendant becomes an absconder but that tolling may begin earlier "in a case in which we know that the defendant was a fugitive at an earlier date" (internal quotation marks omitted)), *with United States v. Island*, 916 F.3d 249, 251, 256 (3d Cir. 2019) (finding that fugitive tolling began upon issuance of arrest warrant despite probation officer's testimony that defendant ceased required reporting two months earlier, after which defendant's whereabouts were unknown), *and United States v. Murguia-Oliveros*, 421 F.3d 951, 952, 955 (9th Cir. 2005) (determining that fugitive tolling period began at time of arrest warrant despite evidence that defendant unlawfully reentered United States and failed to report months earlier). Either way, the government must establish the starting date of the tolling period.

In this case, though a robust record is not before us, we are satisfied that the record supports the district court's finding that by December of 2014 at the outside, Thompson was residing in the United States while taking active measures to conceal his presence

13

and avoid supervision. By then, Officer Walker testified, Thompson had returned to the United States and was in California, organizing multiple shipments of marijuana to Virginia. And there is circumstantial evidence from which the district court could find that Thompson not only entered but also remained in the United States: According to Officer Walker, Thompson obtained a driver's license and cell phone number in California, leased a car, and, by 2016, was residing with a girlfriend in Florida. Finally, throughout this period, Thompson was failing to report to probation, and instead using aliases to avoid detection by law enforcement and probation. Thompson disputes none of these facts,[2] and they are enough to justify the district court's finding that Thompson became a fugitive for tolling purposes by December of 2014.

2.

That brings us to the question of when fugitive tolling ended. Thompson's five-year supervised release term began in June of 2010 and was set to expire in June of 2015. Instead, under the fugitive tolling doctrine, the clock stopped running in December of 2014, with six months still to go on the term. On whatever date fugitive tolling ended, that clock restarted, and the supervised release term continued – and with it, the district court's jurisdiction – for the remaining six months. *See Buchanan*, 638 F.3d at 458 (explaining that the clock on a defendant's supervised release term restarts when tolling

---

[2] Indeed, when probed on this point during oral argument, counsel for Thompson acknowledged that Thompson does not challenge the sufficiency of the evidence showing that he entered and remained in the United States from at least December 2014 to the date of his arrest in 2017.

ends). Whether the district court still had jurisdiction to hold a revocation hearing in January of 2018 turns, in other words, on exactly when tolling ended.

According to the district court, fugitive tolling continued to apply, and the clock on Thompson's term remained stopped, right through its hearing in January of 2018, because Thompson never was "returned to supervision" by probation. J.A. 112. We cannot agree. *Buchanan* makes clear that fugitive tolling stops when "federal authorities are *capable* of resuming supervision" of the defendant, 638 F.3d at 457 (emphasis added), which means the date on which authorities take the defendant into custody, *id.* at 449, 458 (holding that supervised release term restarted when the defendant was detained by federal authorities). In this case, Thompson was located and arrested in Florida in June of 2017, and so that is the date on which his fugitive status came to an end for tolling purposes.

That presents a problem, because, as explained above, once the clock restarted on Thompson's supervised release term in June of 2017, Thompson had only an additional six months to go – extending his term and the court's jurisdiction until December of 2017, or one month *before* the January 2018 revocation hearing. At oral argument, the government conceded the problem, but proposed a solution: Thompson also was a fugitive from supervision, the government argued, when he first reentered the country in 2011, before being taken into custody on April 16 of that year. As a result, the government continued, Thompson's term was tolled for an additional period of time, so that more than six months remained when Thompson was apprehended again in June of 2017. Indeed, there appears to be evidence that Thompson returned to the United States

15

in March of 2011, before he was detained in April of that year, and the government may be able to establish that fugitive tolling applied during that time as well. But the district court never examined such evidence or made such a finding. Accordingly, we remand so that the district court may consider in the first instance whether Thompson absconded from supervision prior to his April 2011 arrest, and, if so, whether that additional period of fugitive tolling is sufficient to extend the court's jurisdiction through the January 2018 revocation hearing.

Because the district court believed it could rely on the fugitive tolling doctrine, it also had no occasion to consider two other possible bases for jurisdiction, both of which remain open for the court's consideration on remand. First, though Thompson was no longer a fugitive once he was apprehended in Florida in June of 2017, his supervised release term may have remained tolled, not under the fugitive tolling doctrine but under 18 U.S.C. § 3624(e), which provides for tolling of a supervised release term while a defendant "is imprisoned in connection with a conviction." Thompson was imprisoned from the time of his June 2017 arrest through his revocation hearing in January of 2018, and pleaded guilty to and was convicted of several of the crimes for which he was imprisoned. If the district court finds on remand that Thompson's imprisonment from June of 2017 through January of 2018 was "in connection with a conviction" for purposes

16

of § 3624(e), then Thompson's supervised release term remained tolled during that period and did not expire prior to the revocation hearing.[3]

Second, even assuming that no form of tolling suffices to extend Thompson's supervised release term until January of 2018, the district court still may have retained the power to sanction Thompson's violations under 18 U.S.C. § 3583(i). As a general rule, as we explained at the start, a district court is without jurisdiction to revoke a supervised release term or sanction violations once the term has expired. But § 3583(i) sets out an exception to that rule, allowing for "[d]elayed revocation" proceedings when two conditions are met: First, a "warrant or summons [must be] issued" before the term's expiration, and second, any delay in adjudicating that summons must be "reasonably necessary." 18 U.S.C. § 3583(i). Both the July 2011 petition and the September 2017 addendum charging Thompson with supervised release violations were issued before December 2017, when Thompson's supervised release term expired under the fugitive tolling doctrine. On remand, the district court may consider in the first instance whether any delay in adjudicating the violations alleged in those petitions was "reasonably necessary" under § 3583(i) in light of Thompson's fugitive status and other relevant circumstances.

---

[3] We have held that a defendant is imprisoned "in connection with a conviction" under § 3624(e) when, like Thompson, he is detained pretrial on charges for which he subsequently is convicted. *United States v. Ide*, 624 F.3d 666, 667 (4th Cir. 2010). But the Supreme Court recently heard argument in a case challenging that holding. *See Mont v. United States*, No. 17-8995 (argued Feb. 26, 2019). If the Court concludes that a defendant is not "imprisoned in connection with a conviction" until after a judgment of conviction is entered, then § 3624(e) will not fill the temporal gap in this case.

## III.

For the foregoing reasons, the district court's order is vacated, and this case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED*