08-5978-cr
USA v. Janvier

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2009

(Argued: March 11, 2010                 Decided: March 26, 2010)

Docket No. 08-5978-cr

———————

UNITED STATES OF AMERICA,

*Appellee,*

— v.—

PHILIP JANVIER, also known as "JUSTIN MOORE",

*Defendant-Appellant,*

———————

B e f o r e:

JACOBS, *Chief Judge,* LYNCH, *Circuit Judge,* and RESTANI, *Judge.*[*]

———————

Appeal from a judgement revoking supervised release and imposing sentence of additional

---

[*] The Honorable Jane A. Restani, *Chief Judge*, United States Court of International Trade, sitting by designation.

incarceration and supervised release entered in the United States District Court for the Southern District of New York (Wood, *J.*). We conclude that the district court lacked jurisdiction because no warrant or summons was issued before the end of the supervised release term.

REVERSED.

---

ROLAND R. ACEVEDO, Seiff, Kretz & Abercrombie, New York, NY, *for Defendant-Appellant*.

MARK D. LANPHER, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

---

GERARD E. LYNCH, *Circuit Judge:*

Phillip Janvier appeals from a judgement of the United States District Court for the Southern District of New York (Wood, *J.*) revoking his term of supervised release, and sentencing him to five months' incarceration and an additional period of supervised release. We reverse the judgment, because the district court lacked jurisdiction to revoke Janvier's supervised release after the supervised release term had ended, and a warrant had not issued before the end of that term.

**BACKGROUND**

Janvier pled guilty in 2003 to several charges relating to the sale of fraudulent United States passports, and in due course was sentenced to thirty months in prison and a three-year term

of supervised release. On July 22, 2005, he completed his prison term and began serving his term of supervised release. His adjustment to supervision was troubled due to his repeated use of illegal drugs, which led to a finding that he had violated the conditions of his release and of modification of the terms of his release to include additional drug treatment and testing. Near the end of his supervised release term, his probation officer concluded, based on the results of a "sweat patch" test, that Janvier had again used cocaine. Accordingly, on July 21, 2008, the Probation Department submitted a petition to the district court, charging that Janvier had violated the conditions of his supervised release by using cocaine between July 9 and July 16, 2008. On the same date, the probation officer also required that Janvier submit a urine sample. That sample also tested positive for cocaine, and on July 30, 2008, the Probation Department submitted an amended petition charging that Janvier had used cocaine on or before July 21, 2008.

The petition submitted to the district court on July 21 was accompanied by a form that asked the district judge to check a box indicating the action to be taken in response to the petition from among various options including the issuance of a summons, the issuance of a warrant, the submission of a request to modify the conditions of release, or "other." Acting promptly, the judge checked the box ordering "[t]he [i]ssuance of a [w]arrant" and signed the order, on July 21, the same day the petition was submitted. A warrant did not actually issue, however, until July 23, 2008. Janvier appeared in court to respond to the petition on July 31.

Throughout the proceedings that followed, Janvier consistently argued, on a variety of grounds, that the court lacked jurisdiction to revoke his release and to impose any punishment because his term of supervised release had already expired. These objections were eventually

3

overruled by the district court, and on October 29, 2008, Janvier admitted that he had used cocaine on July 21, 2008 and was sentenced to five months' imprisonment and to thirty-one additional months of supervised release.

**DISCUSSION**

On appeal, relying on the plain language of the statute authorizing revocation of supervised release after expiration of the term under specific circumstances, Janvier argues that the district court lacked jurisdiction to revoke his supervised release because a warrant had not issued on the charge before the expiration of the term of supervised release. The government responds that Janvier's argument lacks merit because the district court "*ordered* the issuance of a warrant on the final day of Janvier's supervised release, which was a sufficient step to maintain jurisdiction for a later hearing." (Emphasis added.) Guided by the plain language of the governing statute, we agree with Janvier.

Superficially, it might appear anomalous that on October 29, 2008, the district court "revoked" a term of supervision that had unquestionably expired months earlier. And it would indeed be peculiar to permit probation officers and courts to bring retrospective charges of violation against probationers and supervised releasees who had long since completed their periods of supervision. But courts have long recognized that unless a court retains some authority to punish violations of supervised release after the expirations of the term, violations of the conditions of release (which can include serious misconduct) that occur late in the term of supervised release would go unpunished. Elementary conditions of fairness, embodied in the Due Process Clause of the Fifth Amendment, require a hearing at which the court determines

4

whether the releasee has violated the conditions of his release, and if so, whether the violation warrants or requires revocation. *See United States v. Brown*, 899 F.2d 189, 193-94 (2d Cir. 1990) (so holding with respect to probation violations); *see also Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Morrissey v. Brewer*, 408 U.S. 471 (1972). The necessary proceedings take time; if courts lost the power to punish upon expiration of the release or probation term, proceedings on charges of violations filed late in the term would either be rushed, leading to unreliable outcomes, or delayed, leading to avoidance of just punishment.

For these reasons, even before any statute expressly authorized the retention of jurisdiction over violation charges beyond expiration of the term of probation or supervised release, courts asserted such jurisdiction, reasoning that Congress could not have intended such unfortunate results. Courts took different approaches to balancing the interests of former releasees in repose and those of the government in punishing timely-detected late-term violations. For the most part, courts identified either the filing of a petition for revocation with the court or the provision of notice to a releasee that the government would seek to revoke the term of release as the event that would trigger an extension of jurisdiction. So long as some such triggering event had occurred during the term of release, the courts held, a court would retain jurisdiction over the releasee for the time necessary to adjudicate the charge. *See, e.g., United States v. Barton*, 26 F.3d 490 (4th Cir. 1994) (holding that district court had jurisdiction to revoke probation where petition had been filed prior to expiration of probationary term, but no warrant or summons had issued); *United States v. Schimmel*, 950 F.2d 432, 436 (7th Cir. 1991) (holding similarly); *United States v. Strada*, 503 F.2d 1081, 1083 (8th Cir. 1974) (holding that

5

probationer's counseled agreement to appear obviated the need for a warrant and effectively conferred jurisdiction on district court to revoke probation after term of probation had ended).

In 1994, Congress acted to make explicit the authority of courts to revoke supervised release after expiration of the release term, enacting 18 U.S.C. § 3583(i) with respect to supervised release, and the corresponding § 3565(c) with respect to probation. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110505, 108 Stat. 1796, 2017. The statute also clarifies the precise conditions under which such retained jurisdiction exists:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration, a warrant or summons has been issued* on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added). The plain language of the statute identifies the issuance of a warrant or summons during the term of supervised release as the condition for the extension of the court's power to adjudicate a violation charge and if appropriate revoke the term of release.

The government argues, however, that the terms of the statute are not exclusive, and that, while the statute permits the retention of jurisdiction under one particular set of circumstances, it does not preclude the retention of jurisdiction under other, analogous circumstances. More remarkably, it argues that the enactment of § 3583(i) "did not modify" the pre-enactment state of the law permitting more flexible conditions for the retention of jurisdiction.

These arguments are unpersuasive. Although it is true that Congress could have made the

6

exclusivity of the condition for extension of jurisdiction even clearer by emphasizing that the court's power exists "if and only if" or "provided that" a warrant or summons issues during the period of release, the language chosen by Congress is more than clear enough on that score: where a power is granted upon a condition, it can hardly be argued that the power also exists when the condition is unmet.

Moreover, the government's proposed reading is illogical in light of the preceding caselaw. As noted above, the predominant view in the courts before the enactment of § 3583(i) was that the triggering event for the extension of jurisdiction was the filing of a petition seeking revocation by the Probation Department, not the issuance of a warrant in response to such a petition. That solution was therefore readily available to Congress, but Congress chose a different triggering event. Indeed, some cases, such as the Seventh Circuit's *United States v. Schimmel*, relied on by the government in this case, expressly rejected releasees' contentions that the issuance of a warrant, rather than the filing of a petition, should be required. 950 F.2d at 436; *see also United States v. Fontana*, 510 F. Supp. 158, 161 (W.D. Pa.), *aff'd*, 673 F.2d 1303 (3d Cir. 1981). Against that background, the congressional action reads more as a rejection than as an endorsement of that aspect of the prior caselaw. Finally, and most importantly, the filing of a petition necessarily *precedes* the issuance of a warrant. If Congress intended to preserve prior caselaw authorizing retention of jurisdiction whenever a petition had been filed, § 3583(i) would serve no purpose, as jurisdiction would already exist in essentially every case provided for by the statute. The government's suggestion that § 3583(i) does not modify the law existing before its

7

enactment is thus rejected.[1]

Alternatively, the government argues that we should deem the court's order to constitute the "issu[ance]" of a warrant within the meaning of § 3583(i), and that the district court's action in *ordering* the issuance of a warrant thus satisfies the requirement of that statute. This argument presents a closer issue. From a policy standpoint, it might well make more sense to trigger the retention of jurisdiction by the action of a judicial officer determining that probable cause exists and directing that a warrant issue, rather than by the purely ministerial action of the clerk of the court in actually issuing the warrant, which follows inevitably from the court's action. But to adopt the government's argument would be to rewrite the statute to say something that it does not say because we or the government think the revised version would be preferable. The language of the statute, and of the district court's action here, is simply inconsistent with this approach. The statute states that the extension of jurisdiction occurs when "a warrant or summons *has been issued*," clearly referencing the issuance of a warrant as an action that has been perfected. The order of the district court, in contrast, merely *directed* "[t]he [i]ssuance of a [w]arrant," clearly

---

[1] The government attempts to bolster its argument that § 3583(i) incorporates pre-existing case-law permitting extension of jurisdiction on terms other than those provided in the statute itself by contending that we acknowledged in *United States v. Morales*, 45 F.3d 693 (2d Cir. 1995) that the purpose of § 3583(i) "was most likely to codify existing law." But the government's paraphrase is a stretch. *Morales* concerned a post-expiration revocation of supervised release that occurred *before* the enactment of § 3583(i), in which the issue was whether the jurisdiction-extending provisions of that statute demonstrated by implication that no such power had previously existed. What we actually said there was "the most likely purpose of the amendment was to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend supervised release after expiration of the original term *if they issue a summons or warrant during the release period*." *Id*. at 701 (emphasis added). We had no occasion to, and did not, address in *Morales* the quite different proposition that § 3583(i) permits revocation in situations not permitted by the statute itself.

contemplating the issuance of the warrant as an act ordered to occur at some future time. By its own terms, the order does not issue a warrant; it directs someone else to issue one. That order was not carried out until two days later, after the expiration of Janvier's term of supervised release.

Whatever may be said for such creative interpretation of a statute or judicial order where a literal reading reaches absurd or impracticable results, no such result can be seen here. Compliance with the literal terms of § 3583(i) in order to achieve an extension of jurisdiction to adjudicate a charge of violation of supervised release – even one that occurs on the very last day of the release term – would be a simple matter. Had the probation officer here simply taken the trouble to walk the signed form from the judge to the clerk's office, nothing prevented the warrant from being issued on the same day the petition was presented and the issuance of the warrant ordered. Lawyers seeking orders to show cause or other emergency relief routinely do just that. Alternatively, there is no reason why the judge could not be presented with a form warrant or summons ready for signature – also a common practice with subpoenas, writs, or other draft orders that lawyers and law enforcement officers apply to judges to issue. Given the ease with which the statute can be satisfied, there is no reason to contemplate strained readings that would blur the bright line provided by Congress.

So far as we have been able to determine, no court of appeals has addressed this issue since the adoption of § 3583(i). The few district courts that have squarely confronted cases in which the court ordered a warrant or summons before expiration of the supervised release term, but a warrant or summons was not actually issued, have unanimously concluded that the mere

order for a warrant or summons did not satisfy the requirements of § 3583(i). *See United States v. Gomez Santiago,* No. Crim. 93-0176 (CCC), 2004 WL 329309 (D.P.R. Feb. 5, 2004) (magistrate report and recommendation)*; United States v. Hazel*, 106 F. Supp. 2d 14 (D.D.C. 2000). Other district courts have assumed in dicta that authorizing the issuance of a summons or warrant does not confer jurisdiction where no warrant or summons actually issued before the end of the supervised release term.[2]

Because no warrant issued here during the term of supervised release, under the plain terms of the governing statute the district court lacked power to revoke the supervised release term after its expiration based on Janvier's last-minute violation of the conditions of his release. It is therefore unnecessary to address Janvier's other arguments for reversal.

**CONCLUSION**

The judgment of the district court revoking Janvier's supervised release is reversed.

---

[2] *See United States v. Venable*, 416 F. Supp. 2d 64, 74 (D.D.C. 2006); *United States v. Hondras*, 176 F. Supp. 2d 855, 857 (E.D. Wisc. 2001). *See also United States v. Crusco*, No. 90 Cr. 945, 2000 WL 776906 (S.D.N.Y. June 15, 2000), which suggests that an order to issue a summons on its own would not confer jurisdiction to revoke supervised release since a summons must comply with the requirements of Federal Rules of Criminal Procedure 4(c)(2). We do not address the correctness of this reasoning. *Cf. United States v. Bernardine*, 237 F.3d 1279, 1281 n.1 (11th Cir. 2001) (finding that no "rule of criminal procedure, relevant statute or case law supports the application of Rule[] 4 . . . in the context of a supervised release violation hearing . . . .").