PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM BUCHANAN, a/k/a Kenneth
Parker,

*Defendant-Appellant.*

No. 09-4834

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:91-cr-00062-TSE-1)

Argued: December 10, 2010

Decided: April 13, 2011

Before WILKINSON, SHEDD, and DUNCAN,
Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

## COUNSEL

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Joseph V. Moreno, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Kevin R. Brehm, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

SHEDD, Circuit Judge:

While on federal supervised release, William Buchanan absconded and remained a fugitive for approximately 13 years. After Buchanan was apprehended the district court found that he had committed multiple supervised release violations from the time he absconded until he was retaken; consequently, it revoked his supervised release and sentenced him to separate concurrent custody terms of 48 months, 36 months, and 27 months. Buchanan now appeals the revocation order in part, and the 36- and 27-month sentences, arguing that the court lacked jurisdiction to adjudicate the violations associated with those sentences because they were not charged in a warrant or summons before the scheduled expiration of his supervised release term. The court rejected this argument, concluding that the supervised release term was tolled while Buchanan was a fugitive. *United States v. Buchanan*, 632 F. Supp.2d 554 (E.D.Va. 2009). Because we agree with the court's conclusion, we affirm.

I

In 1991, Buchanan pled guilty in the Eastern District of Virginia to one count of conspiracy to distribute 50 grams or more of crack cocaine. The district court sentenced him to a 120-month term of imprisonment, which it subsequently reduced to 30 months on the government's substantial assis-

tance motion. The court also imposed a five-year supervised release term.

In March 1993, Buchanan was released from federal custody, and his supervised release term commenced. Because he was an Ohio resident, his immediate supervision was transferred to the United States Probation Office in the Northern District of Ohio. However, jurisdiction over his supervision was maintained by the United States Probation Office in the Eastern District of Virginia. Therefore, Buchanan had a probation officer in Ohio to whom he was required to report, as well as a probation officer in Virginia who monitored his supervision. Buchanan's supervised release term was scheduled to end in March 1998.

In May 1994, Buchanan was indicted in Ohio on state drug trafficking charges. He was released on bond, but in February 1995 he failed to appear for trial in state court, resulting in the issuance of a state arrest warrant. Buchanan's last personal contact with his Ohio probation officer occurred in January 1995. Shortly thereafter, the Ohio probation officer determined that Buchanan had absconded from federal supervision.

In April 1995, the Virginia probation officer submitted to the district court a "Petition on Probation and Supervised Release" (the "Petition"), alleging that Buchanan violated the terms and conditions of his supervised release by incurring a new criminal charge in Ohio, by failing to report to his Ohio probation officer as directed, and by failing to notify his Ohio probation officer within 72 hours of any change in residence or employment. Consequently, the court issued an arrest warrant, which remained outstanding until December 2008, when Buchanan was located and arrested in Georgia.

In February 2009, an addendum to the Petition was filed alleging that during the time he was a fugitive Buchanan had violated the terms and conditions of his supervised release in several respects. Specifically, this addendum alleges that (1)

in September 1996, Buchanan was arrested in Alabama for marijuana trafficking; (2) in March 2005, he was arrested in Missouri for (*inter alia*) possession of a controlled substance and unlawful use of a weapon; (3) in January 2008, he was arrested in Georgia for driving under the influence; and (4) in December 2008, he was arrested in Georgia for entering an auto or other motor vehicle with intent to commit a theft or felony, and financial transaction card fraud. In March 2009, a second addendum to the Petition was filed, alleging that in 2008 Buchanan violated the terms and conditions of his supervised release by committing the crime of identity theft in Georgia. Buchanan avoided federal detection for these arrests by using various aliases.

Upon his return to the Eastern District of Virginia, Buchanan conceded that the Petition (setting forth the 1995 charges) was properly before the district court, but he moved to dismiss the two addenda, contending that the court lacked jurisdiction over them because his scheduled supervised release term expired in March 1998, and the addenda were not filed until 2009. He argued that the supervised release statutes provide only two ways in which the release term may be adjusted or the court can exercise control over the defendant outside that period. The first way is codified in 18 U.S.C. § 3624(e), which allows for a supervised release term to be tolled during any period in which the defendant is imprisoned for 30 days or more in connection with another crime. The second is codified in 18 U.S.C. § 3583(i), which authorizes a district court to exercise authority over a defendant after the scheduled expiration of the supervised release term for a reasonable period to adjudicate a matter arising before the expiration of the term if a warrant or summons for that matter is issued during the term.[1] Reading these statutes in light of the

---

[1] When applicable, § 3624(e) stops the running of the supervised release period and is thus a tolling provision. *See United States v. Ide*, 624 F.3d 666 (4th Cir. 2010). However, § 3583(i) "does not stop the running of the supervised release period; rather, it extends the district court's power to revoke beyond the supervised release period in certain circumstances." *United States v. Jordan*, 572 F.3d 446, 448 (8th Cir. 2009).

canon "*expressio unius est exclusio alterius*" – Buchanan contended that the court was not authorized to adjudicate the violations set forth in the addenda because no warrant or summons issued for them during the supervised release term.

The district court denied the motion, holding that Buchanan's supervised release term was tolled while he was a fugitive. The court concluded that the supervised release statutes do not address the issue of fugitive tolling and that its application is consistent with the congressional purpose of supervised release and the law relating to fugitives generally. On the merits of the violations, the court found Buchanan guilty on the 1995 charges that he failed to appear in Ohio state court for the drug trafficking indictment and failed to maintain contact with his probation officer, the 1996 Alabama drug trafficking charge, and the 2008 Georgia identity theft charge. The court imposed concurrent sentences of 48 months, 36 months, and 27 months, respectively, and dismissed the remaining alleged violations.

II

On appeal, Buchanan reiterates the statutory argument he made below, contending that the district court erred by denying his motion to dismiss the addenda.[2] Stated simply, the issue before us is whether a sentencing court is authorized to revoke a term of supervised release after the scheduled expiration date of the release term for conduct that (a) occurs while the defendant has absconded from supervision and (b)

---

[2]Buchanan does not challenge either the district court's findings that he committed the conduct underlying the violations or its authority to impose the 48-month sentence. Therefore, regardless of our decision, he will be subject to the 48-month sentence. Because that sentence is concurrent to the others, the "concurrent sentence doctrine" is potentially applicable in this case; however, we exercise our discretion to decide the appeal on the merits. *See Benton v. Maryland*, 395 U.S. 784 (1969) (discussing doctrine); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) (same).

is not brought to the court's attention until after the term's scheduled expiration date when the defendant is apprehended. This is a matter of law that we review de novo. *See Ide*, 624 F.3d at 668.

## A.

We begin with an overview of the pertinent aspects of the supervised release system. In the Sentencing Reform Act of 1984, "Congress eliminated most forms of parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). Supervised release is similar to parole in essential respects, *United States v. Pierce*, 75 F.3d 173, 177 (4th Cir. 1996), but "Congress designed supervised release as the successor to parole . . . because it believed that the parole system provided inadequate supervision," *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999).

Supervised release "is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Rather, it "is a unique method of post-confinement supervision," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration," *United States v. Johnson*, 529 U.S. 53, 59 (2000). "The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty," *Johnson v. United States*, 529 U.S. at 708-09, and "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes," *United States v. Bowe*, 309 F.3d 234, 240 (4th Cir. 2002).

The maximum length of a supervised release term varies according to the severity of the initial offense. *See* 18 U.S.C. §§ 3583(a), (b). The term commences on the day the defendant "is released from imprisonment and runs concurrently

with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release," but it does not run (*i.e.*, is tolled) during any period in which the defendant "is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e).

A defendant who is on supervised release must abide by certain mandatory and discretionary terms and conditions, *see* 18 U.S.C. § 3583(d), which constitute "a substantial imposition on [his] liberty," *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002). If the defendant violates a term or condition of release, the sentencing court may (and in some instances must) revoke the supervised release and require him "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision," subject to certain statutory limits. 18 U.S.C. § 3583(e)(3). "[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence." *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998).

Apart from the tolling provision of § 3624(e), the supervised release statutes were initially silent regarding whether a sentencing court could revoke supervised release after the scheduled expiration of the release term. In the face of this silence, many courts "recognized that unless a court retains some authority to punish violations of supervised release after the expiration of the term, violations of the conditions of release (which can include serious misconduct) that occur late in the term of supervised release would go unpunished." *United States v. Janvier*, 599 F.3d 264, 265-66 (2d Cir. 2010). Reasoning "that Congress could not have intended such unfortunate results," these courts held that "[s]o long as some

triggering event had occurred during the term of release, . . . a court would retain jurisdiction over the releasee for the time necessary to adjudicate the charge." *Id.* at 266.

We were presented with this issue in *United States v. Barton*, 26 F.3d 490 (4th Cir. 1994). There, we held that "courts retain jurisdiction to hold hearings related to revocation of supervised release for a reasonable period after the term of release expires when a petition charging a violation of the conditions of supervised release is filed during the period of supervised release." *Id.* at 491. We found that the plain language of § 3583(e)(3), which provides for revocation, compelled this result because that section incorporates the Federal Rules of Criminal Procedure that are applicable to supervised release revocation, and one such rule provided for a revocation hearing "within a reasonable time." As we explained: "If a petition is filed near the end of the supervisory period, the only logical construction of 'within a reasonable time' is that a hearing may be held shortly after the supervisory period expires." 26 F.3d at 491-92. We rejected the defendant's argument that "because a tolling provision is included in 18 U.S.C. § 3565, which governs revocation of probation, but is not included in . . . § 3583, Congress did not intend for the district court's jurisdiction to continue beyond the term of supervised release." 26 F.3d at 492 (footnote omitted).

In 1994, Congress enacted § 3583(i), which is titled "Delayed revocation," to "make explicit the authority of courts to revoke supervised release after expiration of the release term. . . ." *Janvier*, 599 F.3d at 266. Section 3583(i) provides that the sentencing court's power to revoke supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."

## B.

The supervised release statutes do not address the issue of fugitive tolling, and we have not previously addressed it in the supervised release context. However, we alluded to the doctrine in the analogous context of probation revocation in *United States v. Workman*, 617 F.2d 48 (4th Cir. 1980), stating that "a probationer [cannot] obtain credit against the [probation] period for any period of time during which he was not, in fact, under probationary supervision by virtue of his own wrongful act." *Id.* at 51. Our holding in *Workman* is consistent with the general rule that "when the service of a sentence is interrupted by conduct of the defendant the time spent out of custody on his sentence is not counted as time served thereon." *United States v. Luck*, 664 F.2d 311, 312 (D.C. Cir. 1981); *see also Theriault v. Peek*, 406 F.2d 117, 117 (5th Cir. 1968) ("Escape from prison interrupts service, and the time elapsing between escape and retaking contribute[s] nothing to the service of the sentence.").[3]

The Supreme Court applied this general rule in the parole context in *Anderson v. Corall*, 263 U.S. 193 (1923). There, the defendant was paroled in February 1916 after serving part of his three-year federal criminal sentence. While on parole, he was convicted of a state crime, and in October 1916 he was confined in state prison for three years. After the defendant

---

[3]There is a strong federal policy disfavoring fugitives in analogous circumstances. This policy arises from the "[d]eeply rooted" maxim "that no man may take advantage of his own wrong." *Glus v. Brooklyn East. Dist. Term.*, 359 U.S. 231, 232 (1959). *See, e.g.*, 18 U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice."); *Jaffe v. Accredited Sur. & Cas. Co.*, 294 F.3d 584 (4th Cir. 2002) (discussing the fugitive disentitlement doctrine); *United States v. Kosko*, 870 F.2d 162, 164 (4th Cir. 1989) (in affirming the denial of a continuance motion for a defendant who had absconded during pretrial proceedings, we stated that "to have granted him the continuance . . . which he sought would have been to reward him for his misconduct in violating the conditions of his release and remaining a fugitive from justice").

was released from state prison in December 1919, he was retaken into federal custody, and shortly thereafter the parole board revoked his parole. The defendant then sought habeas relief, arguing that his three-year federal sentence had ended in March 1917 while he was in state prison. The defendant prevailed in the lower courts, but the Supreme Court reversed.

The Court began its analysis by observing that "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence. Escape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term." *Id.* at 196. The Court then noted that parole does not "suspend service or operate to shorten the term," and "[w]hile on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct." *Id.* Given this framework, the Court stated that although parole is "an amelioration of punishment, it is in legal effect imprisonment." *Id.* Applying these principles to the facts of the case, the Court concluded:

> Corall's violation of the parole, evidenced by the warden's warrant and his conviction, sentence to and confinement in the [state] penitentiary, interrupted his service under the sentence here in question, and was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict. The term of his sentence had not expired in October, 1916, when . . . he was convicted of another crime and sentenced to the [state] penitentiary. Then – if not earlier – he ceased to be in the legal custody and under the control of the warden of the [federal] penitentiary, as required by section 3 of the act and the terms of the parole authorized thereby. His claim that his term expired in 1917 before he was retaken and while he was serving sen-

tence [in state prison] cannot be sustained, and we hold that it had not expired in January, 1920, at the time of the action of the board.

*Id.* at 196-97.[4]

C.

The First and the Ninth Circuits appear to be the only other circuit courts to have considered the question of fugitive tolling in the supervised release context. Those courts have reached different conclusions.

Consistent with the general rule discussed above, the Ninth Circuit applies tolling in the supervised release context when a defendant has absconded, explaining that the fugitive tolling doctrine rests on the principle that a person on supervised release "should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release." *United States v. Murguia-Oliveros*, 421 F.3d 951, 954 (9th Cir. 2005). In the Ninth Circuit's view, a contrary ruling "would reward those who flee from bench warrants and

---

[4]Similarly, in *Zerbst v. Kidwell*, 304 U.S. 359 (1938), the defendants, while on federal parole, committed federal crimes for which they were convicted and sentenced. After serving their second sentences, the defendants were held in custody pursuant to a parole violation warrant. Eventually, their habeas proceedings reached the Supreme Court, which held that not only had the defendants forfeited the privileges of parole, but since they were "no longer in either actual or constructive custody under [their] first sentence, service under the second sentence cannot be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system." *Id.* at 361. Notably, the Court stated: "It is not reasonable to assume that Congress intended that a parolee whose conduct measures up to parole standards should remain under control of the board until expiration of the term of his sentence, but that misconduct of a parole violator could result in reducing the time during which the board has control over him to a period less than his original sentence." *Id.* at 363.

maintain their fugitive status until the expiration of their original term of supervised release." *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992). Applying this rule, the Ninth Circuit holds that "[f]ugitive tolling begins when the defendant absconds from supervision — making it impossible for the Probation Office to supervise his actions — and ends when federal authorities are capable of resuming supervision." *United States v. Ignacio Juarez*, 601 F.3d 885, 890 (9th Cir. 2010).

The First Circuit has rejected the Ninth Circuit's view, holding that "there can be no tolling of the period of supervised release on the basis of fugitive status." *United States v. Hernandez-Ferrer*, 599 F.3d 63, 64 (1st Cir. 2010). In reaching this conclusion, the court primarily relied on the plain language of § 3624(e) (the "delayed revocation" provision). As it explained:

> To begin, the statutory provisions touching upon supervised release neither expressly require nor expressly permit tolling during the interval when an offender is in fugitive status. The only tolling provision that Congress saw fit to enact is contained in 18 U.S.C. § 3624(e), which tolls the running of a term of supervised release during any period in which an offender is imprisoned for thirty days or more in connection with a different crime. The absence of an express tolling provision for fugitive status, coupled with the presence of an express tolling provision that encompasses other circumstances, is highly significant. The maxim "*expressio unius est exclusio alterius*" – which translates roughly as "the expression of one thing is the exclusion of other things" – is a venerable canon of statutory construction, and that maxim is directly applicable here.

599 F.3d at 67-68 (citations omitted).

Bolstering its conclusion, the First Circuit noted that several courts citing the *expressio unius* canon have ruled that the supervised release statutes do not authorize tolling a term of supervised release during the period that a defendant is absent from the country because of deportation. In light of this authority, the court observed:

> [T]he fact that Congress provided for tolling a period of supervised release only when an offender is imprisoned for a different crime is a decisive argument for the proposition that Congress did not intend to toll a period of supervised release for any other reason (including an offender's fugitive status). If Congress had wanted to authorize tolling when an offender absconds from supervision, we believe that it would have said so.

*Id.* at 68 (footnote omitted).[5]

The First Circuit also expressly disagreed with the Ninth Circuit's determination that failure to apply fugitive tolling rewards a defendant who absconds and remains a fugitive until his supervised release term expires. The court pointed to § 3583(i) and stated that "as long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located, and his conduct while a fugitive will be considered at sentencing. It follows that a judicially contrived tolling mechanism is not necessary to deter offenders from absconding." 599 F.3d at 69 (citation omitted).

Factually, *Hernandez-Ferrer* is similar to the instant case because the district court had before it two violations: one that

---

[5]Additionally, the First Circuit found that in light of certain caselaw that predated the Sentencing Reform Act, Congress' codification of a tolling provision only for terms of imprisonment indicates that Congress did not intend for any other tolling provision to apply.

was concededly within the scheduled supervised release term and one that occurred after the term's scheduled expiration date. Although the First Circuit held that fugitive tolling could not operate to permit the court to revoke supervised release based on the latter violation, it also held that the court could consider the conduct underlying that violation when sentencing the defendant for the prior violation. As it explained: "Crimes committed by an offender between the occurrence of a supervised release violation and sentencing for that violation are relevant in weighing the need for deterrence — a key consideration mandated by section 3583(e)." *Id.*[6]

D.

Having considered the foregoing authorities, we agree with the district court and the Ninth Circuit and hold that a term of supervised release is tolled when a defendant absconds from supervision. As noted, the supervised release term constitutes part of the original criminal sentence, and the congressional intent is for defendants to serve their full release term. Just as an escaped prisoner or parole violator is not credited for time during which they are not in compliance with their criminal sentence, a fugitive from supervised release should not be so credited. A contrary holding would not only thwart congressional intent but also potentially reward an absconder for his misconduct. *See generally United States v. Johnson*, 138 F.3d 115, 119 (4th Cir. 1998) (noting that "Congress never intended . . . for sentencing to become a hyper-technical exercise devoid of common sense").[7]

---

[6]Notwithstanding the First Circuit's criticism, the Ninth Circuit continues to apply fugitive tolling in the supervised release context. *See United States v. Watson*, 633 F.3d 929 (9th Cir. 2011).

[7]We disagree with the First Circuit's statement that tolling is unnecessary to avoid allowing a defendant to benefit from absconding. That statement may have merit in cases where a petition or summons is filed before the expiration of the supervised release term, in which case the § 3583(i) delayed revocation provision would extend the sentencing court's author-

It is true that Congress has created a supervised release toll-ing provision in only one instance — § 3624(e). As noted, Buchanan and the First Circuit rely on the *expressio unius* canon and point to § 3624(e) as evidencing congressional intent to preclude fugitive tolling of the supervised release term. We find the *expressio unius* canon to be unavailing. *See generally Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (noting that statutory canons "are not mandatory rules" and that "other circumstances evidencing congressional intent can overcome their force"). Section 3624(e)'s tolling provi-sion appears to be based on the fact that a defendant who is imprisoned for more than 30 days is not, while imprisoned, under the supervision contemplated by the supervised release statutes. To effectuate its intent to require service of the full supervised release term, Congress determined that tolling in that instance is necessary. *See United States v. Jackson*, 426 F.3d 301, 305 (5th Cir. 2005) ("Shortening the period of supervised release reduces the amount of time a former pris-oner is monitored by the system and undermines the rehabili-tative goals Congress pursued in enacting § 3624. While Jackson was in prison, purposefully kept *out* of the commu-nity, his probation officer could not supervise him; it was impossible for his probation officer to assist him in *returning* to the community.").

We do not believe that Congress' decision to address super-vised release tolling only in the imprisonment context answers the question of whether fugitive tolling is applicable. As the Supreme Court has made clear, congressional silence on an issue is not always indicative of congressional intent, *see, e.g.*,

---

ity beyond the scheduled expiration date. However, it does not take into account a case where a defendant absconds late in the release term and his absence is not detected in time for a warrant or summons to be issued before the term expires. Without issuance of such a warrant or summons, that defendant would be beyond the sentencing court's authority under the First Circuit's holding, and he would have thus avoided with impunity serving the full supervised release term.

*Staples v. United States*, 511 U.S. 600, 605 (1994), and courts should "not read the enumeration of one case to exclude another unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).[8] Moreover, "the normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bk. v. N.J. Dept. of Env. Prot.*, 474 U.S. 494, 501 (1986). We find no indication to suggest that Congress considered the issue and intended to preclude the judicially created doctrine of fugitive tolling in the supervised release context. *See Young v. United States*, 535 U.S. 43, 52 (2002) (rejecting the argument that the presence of a tolling provision in one bankruptcy statute, and the absence of such a provision in another bankruptcy statute, compels the conclusion that Congress intended to preclude tolling under the latter statute); *Barton*, 26 F.3d at 492 (rejecting the argument that "because a tolling provision is included in 18 U.S.C. § 3565, which governs revocation of probation, but is not included in . . . § 3583, Congress did not intend for the district court's jurisdiction to continue beyond the term of supervised release." (footnote omitted)).

We are aware that in *United States v. Johnson*, the Supreme Court addressed § 3624(e) and stated: "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." 529 U.S. at 58. However, read in context, that statement does not preclude fugitive tolling. In that case, two of the defendant's multiple convictions had been vacated, which led to his serving too much time in prison. As a consequence,

---

[8]As the 11th Circuit has explained, congressional silence can be interpreted in a variety of ways. *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 945 (11th Cir. 2001).

the defendant argued that his supervised release term should have commenced at the time he was supposed to have been released from prison rather than when he was actually released. In other words, he contended that his supervised release term ran concurrently with the excess period during which he was imprisoned. Relying on the plain language of § 3624(e), the Court rejected this argument. The Court noted that § 3624(e) allows for concurrent counting in certain circumstances, none of which was applicable.[9] It is clear from the context that the Court's statement regarding the limitation of exceptions in § 3624(e) is directed at concurrent counting, and the Court was not addressing whether Congress meant to preclude alternate forms of tolling.

We also recognize that several circuit courts have held that tolling a term of supervised release during a defendant's absence from the United States because of an immigration removal order is impermissible. However, we agree with the district court that fugitive tolling is distinguishable because the fugitive-defendant's absence arises from his own misconduct. The same cannot be said about a defendant who has been removed from the country by government order.

E.

When applicable, tolling operates to "stop the clock." *See United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped."). This point is made clear in

---

[9]One of the concurrent provisions is set forth in the tolling sentence of § 3624(e). Specifically, that provision allows for supervised release to run concurrently with a term of imprisonment of less than 30 consecutive days. If the term of imprisonment is 30 days or more, then the supervised release term is tolled.

§ 3624(e), which specifies that the term "does not run" while the defendant is imprisoned for another crime for 30 or more consecutive days. Thus, when a defendant absconds from supervised release, his supervised release "clock" stops, and it resumes when federal authorities are capable of resuming supervision.

Buchanan contends that, as applied in this case, tolling effectively operates to do more than stop the clock. He argues that tolling extends his term beyond five years because the district court revoked his release and sentenced him not only for the 1995 violations relating to his flight from supervision, but also for conduct that occurred during the 13-year period in which he was a fugitive. We are unpersuaded.

When a defendant absconds while on supervised release, his absence precludes the sentencing court from exercising supervision over him. Tolling is necessary in that instance to ensure that, upon being apprehended, the defendant will be subject to judicial supervision for a complete term. However, that does not mean that a defendant who has absconded thereby nullifies the terms and conditions of the supervised release order during his flight. Rather, the terms and conditions remain in effect, and the fugitive-defendant is not at liberty to embark on a "holiday" from them. To the extent that this result may seem harsh, it is the defendant's own misconduct which creates it.

III

Buchanan absconded from his five-year supervised release term in 1995, which was the second year of the term, and he was not brought back under the district court's supervision until late 2008. His supervised release term was tolled during the 13 years he was a fugitive, and it recommenced when the court was able to exercise supervision over him. Because he had approximately three years remaining on his supervised release term, the court had the authority to revoke his super-

vised release for the violations set forth in the addenda. Accordingly, we affirm the order of revocation and the concurrent sentences imposed thereto.

*AFFIRMED*