**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PETER HUGH POCKLINGTON,
*Defendant-Appellant*.

No. 13-50461

D.C. No.
5:09-cr-00043-VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
April 6, 2015—Pasadena, California

Filed July 2, 2015

Before: Andrew J. Kleinfeld, M. Margaret McKeown,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Criminal Law

The panel reversed the district court's order retroactively revoking a defendant's probation and imposing penalties for purported probation violations.

The panel held that 18 U.S.C. § 3565(c), which conditions the "power of the court" to adjudicate probation violations after the probation period expires on the issuance of "a warrant or summons" before the expiration date, is jurisdictional, and that because the government did not get a warrant or summons before the defendant's probation expired, the district court lacked jurisdiction to extend the defendant's probation beyond its termination date.

### COUNSEL

Becky Walker James (argued), James & Stewart LLP, Pacific Palisades, California, for Defendant-Appellant.

Joseph B. Widman (argued), Assistant United States Attorney, Riverside Californria; Stephanie Yonekura, Acting United States Attorney, and Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division, Riverside California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

McKEOWN, Circuit Judge:

The Violent Crime Control and Law Enforcement Act of 1994 conditions the "power of the court" to adjudicate probation violations after the probation period expires on the issuance of "a warrant or summons" before the expiration date. 18 U.S.C. § 3565(c). In this appeal, we consider the court's authority to retroactively revoke probation and impose a criminal sentence after the period of probation has expired. We hold that § 3565(c) is jurisdictional and that when Congress used the words "warrant or summons," it meant them. Close enough doesn't fly under the statute. If the government suspects wrongdoing and wants to extend the probation period, § 3565(c) provides easy-to-follow instructions: get a warrant or summons before the probation expires. Because the government did not do so, the district court lacked jurisdiction to extend Peter Pocklington's probation beyond its termination date. We reverse and vacate the district court's post-termination order revoking Pocklington's probation and imposing penalties for purported probation violations.

## BACKGROUND

In his heyday a few decades ago, Pocklington built a billion-dollar financial empire and was one of the most famous businessmen in Canada. By the 1980s, he owned the country's largest car dealership, an array of real estate holdings and food manufacturing companies, and, in a hockey-crazed country, the NHL's Edmonton Oilers—a team that, under his ownership, won a record five Stanley Cups but also earned a slice of sports infamy by trading away the

game's all-time greatest player, Wayne Gretzky. By 2008, Pocklington's riches had run out, and he had amassed over $19 million in liabilities. He filed for bankruptcy that year after he moved south to Indian Wells, California.

As part of his bankruptcy petition, Pocklington certified that he did not hold or control property owned by another person. In truth, though, Pocklington controlled two storage units containing almost $10,000 of his wife's property—including clothes, pictures, china, fishing gear, and sports memorabilia—and $9,344.63 in two undisclosed bank accounts. When these assets were unearthed, Pocklington was charged with two counts of bankruptcy fraud. He averted these charges by pleading guilty to the lesser offense of perjury. Pocklington was sentenced to a two-year term of probation, running from October 27, 2010 to October 26, 2012.

In June 2012, toward the end of Pocklington's probation period, the Probation Office received a letter from an attorney representing Pocklington's creditors. The letter alleged that Pocklington failed to disclose his ownership interest in his $2 million house, a majority ownership stake in a nutritional drink company, and positions on four corporate boards. Pocklington also failed to disclose millions of dollars in assets and income, according to the letter.

The Probation Office notified the district court about the letter, but asserted that despite the allegations, "there is no violation of Probation" and requested that the court "allow supervision to expire as scheduled on October 26, 2012." The district court disagreed, noting that Pocklington may have violated the probation term that he "shall not commit any violation of local, state or federal law or ordinance." In

response, the Probation Office assigned an FBI agent to review the matter; he "spent several days combing over the allegations" set forth in the letter. The agent concluded that he "did not see any obvious violations of Mr. Pockington's probation" and that investigating the matter would take a year or more. Nevertheless, the Probation Office requested that the court extend Pocklington's probation for 90 days "in an effort to work with the U.S. Attorney and their agents to determine if any additional information can be discovered regarding possible violations."

On October 19, 2012, the district court issued an "order to show cause"—in effect, ordering a hearing on whether Pocklington's probation should be extended. However, the district court did not conduct that hearing until October 31—five days *after* Pocklington's probation expired. At the hearing, the court ordered a 90-day extension to run retroactively from October 26, 2012 to January 24, 2013. After further investigation, the Probation Office alleged that Pocklington violated the terms of his probation by failing to submit truthful written reports and failing to provide accurate financial statements. Almost a year after the show-cause order, in September 2013, the district court revoked Pocklington's probation and sentenced him to six months imprisonment followed by two years of supervised release, including six months of home detention.

## ANALYSIS

The central issue in this appeal is whether the requirements for extending probation under 18 U.S.C. § 3565 are jurisdictional. Section 3565(c) provides:

> The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

We conclude that the plain language limiting the "power of the court" sets out a jurisdictional rule. Because the government did not comply with the statute's strictures, the district court did not have the power to extend retroactively and later revoke Pocklington's probation.

Although Pocklington did not raise his jurisdictional argument below, we "review subject matter jurisdiction de novo despite any failure to object . . . in the trial court." *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002); *see also United States v. Tisor*, 96 F.3d 370, 373 (9th Cir. 1996) (noting that, in criminal case, "[w]e review de novo a district court's assumption of [subject matter] jurisdiction." (second alteration in original) (quoting *United States v. Vasquez–Velasco*, 15 F.3d 833, 838–39 (9th Cir. 1994)); *but see United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008) (applying plain-error review to jurisdictional inquiry under 18 U.S.C. § 3583(i)).

Jurisdictional provisions set out "the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis in original) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)). Although the Supreme Court has warned against

overuse of the term jurisdictional, Congress "need not use magic words" to make a jurisdictional rule; all that is required is a "'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)). Central to the inquiry is whether the provision "speak[s] in jurisdictional terms . . ." *Arbaugh*, 546 U.S. at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). To speak the language of jurisdiction, Congress can do no better than frame a provision in terms of the power of the court. *Landgraf v. USI Film. Prods.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring)).

The unmistakable language of § 3565(c)—defining the "*power of the court* to revoke a sentence of probation"— could hardly speak more clearly to the district court's jurisdiction-defining "*power* to adjudicate the case." *Cotton*, 535 U.S. at 630. We have characterized the statute as jurisdictional, explaining that § 3565(c) "allows the court to retain jurisdiction" if its requirements are met. *United States v. Castro-Verdugo*, 750 F.3d 1065, 1070 (9th Cir. 2014). In the same vein, we described identical language in the companion provision dealing with supervised release, *see* § 3583(i), as "extend[ing] the jurisdiction of the federal court." *United States v. Garrett*, 253 F.3d 443, 449 (9th Cir. 2001); *see also United States v. Vargas-Amaya*, 389 F.3d 901, 907 (9th Cir. 2004). Our precedent is aligned with that of the Second and Third Circuits, which both treat § 3583(i) as jurisdictional. *United States v. Merlino*, 785 F.3d 79, 81 (3d

Cir. 2015); *United States v. Janvier*, 599 F.3d 264, 267 (2d Cir. 2010).

The government's argument that plain-error review nevertheless applies is unavailing. Its citation to a single published case, the Sixth Circuit's decision in *Madden*, is not persuasive. 515 F.3d at 608. To begin, that case did not involve the timing or retroactive extension of probation. Rather, in *Madden*, there was "no dispute that the [] warrant was issued before [the defendant's] supervised-released term expired, and it therefore met the requirements set out in § 3583(i)." *Id.* at 607–08. Of course, that is precisely the problem in this case—no warrant was issued before Pocklington's probation expired. Significantly, the Sixth Circuit repeatedly described § 3583(i) as a jurisdictional provision, labeling the question on appeal as "[t]he district court's jurisdiction over Madden's supervised-release violation" and its "[j]urisdiction to sanction Madden under 18 U.S.C. §3583(i)." *Id.* at 605, 606.

As the government acknowledges, we have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *see also Merlino*, 785 F.3d at 87–88 (holding that, as a jurisdictional rule, § 3583(i) is not subject to equitable tolling). That wiggle room falls within Congress's province. Here, Congress has prescribed a specific procedure for extending the jurisdiction of the district court beyond the expiration of probation: the issuance of a "warrant" or "summons" before the probation period expires.[1]

---

[1] The government argued, for the first time in a Fed. R. App. P. 28(j) letter three days before oral argument, that § 3565(c) is susceptible to what it terms "extra-textual" tolling, citing two cases where we applied the

Our precedent is clear: A warrant must comply with the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. Const. amend. IV; *see Vargas-Amaya*, 389 F.3d at 906–07. Hence, a warrant "must have been based upon sworn allegations that the person violated a condition of" supervised release or probation; it "cannot allege something less than" such a violation. *Vargas-Amaya*, 389 F.3d at 905–06. A summons similarly requires allegations supported by probable cause. *United States v. Greenberg*, 320 F.2d 467, 471 (9th Cir. 1963) (holding that rules for "issuance of a warrant are the same" as with "issuance of a summons . . . insofar as the requirement of probable cause is concerned."); *see also see* Fed. R. Crim. P. 4 (describing summons and warrant interchangeably).

The Probation Office's *request* to extend probation issued October 18, 2012 can hardly be classified as a warrant because the Probation Office lacks the power to issue one. *See Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 875 (9th Cir. 2007) (noting that a judge or court must issue a warrant).

The Probation Office was crystal clear about the absence of anything resembling probable cause. The Probation Office first stated unequivocally that Pocklington had not violated his probation and then, upon prodding by the district court

---

fugitive tolling doctrine to the supervised release statute. *See United States v. Watson*, 633 F.3d 929, 931 (9th Cir. 2011); *United States v. Ignacio Juarez*, 601 F.3d 885, 888 (9th Cir. 2010) (per curiam). In both *Watson* and *Ignacio Juarez*, however, the defendants conceded the general validity of the fugitive tolling doctrine without reference to *Bowles*. Fugitive tolling is inapposite to the facts of Pocklington's case, so we need not resolve any tension between *Watson* and *Ignacio Juarez* and the Supreme Court's statements in *Bowles*.

and an FBI review, confirmed that it "did not see any obvious violations of Mr. Pocklington's Probation." The ultimate request for more time to "determine if any additional information can be discovered regarding possible violations" expressed, at most, the aspiration that wrongdoing might be uncovered at some unknown future date.

The district court's response to the Probation Office—a one-sentence handwritten note for an "order to show cause hearing"—has none of the indicia of a warrant. Rather than confirming the existence of probable cause, that note simply contemplated giving the Probation Office extra time to "determine if there are any violations of Probation."

The government's argument that § 3565(c) permits the extension of probation any time a court issues the "functional equivalent" of a warrant falls flat. This approach would require us to ignore the provision's plain language—a cardinal sin of statutory interpretation. "We decline to 'read words into a statute that are not there.'" *United States v. Schales*, 546 F.3d 965, 974 (9th Cir. 2008) (quoting *United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002)). Congress pegged jurisdiction to the issuance of a "warrant" or "summons"—not the *functional equivalent* of a warrant or summons. *See Merlino*, 785 F.3d at 87–88 (rejecting "functional equivalence" test for warrant or summons); *Janvier*, 599 F.3d at 268 (same).

We are not alone in our adherence to the statutory text. In *Janvier*, the district court ordered the issuance of a warrant before the defendant's probation expired, but the order wasn't carried out until two days after expiration. 599 F.3d at 265. Although the government argued that the district court's warrant order was an "analogous circumstance[]" to the

actual issuance of the warrant, the Second Circuit disagreed and noted that "[t]he statute states that the extension of jurisdiction occurs when 'a warrant or summons *has been issued*,' clearly referencing the issuance of a warrant as an action that has been perfected." *Id.* at 267–68 (quoting 18 U.S.C. § 3583(I)). The Third Circuit is in accord. *See Merlino*, 785 F.3d at 84 (noting "strict application" of jurisdictional requirements in supervised release cases). Like our sister circuits, we decline to fudge the plain language of § 3565(c). If anything, the government is on weaker ground than in *Janvier* because no warrant or summons was even issued, much less "perfected," before Pocklington's probation expired.

The district court lacked jurisdiction under § 3565(c) to extend Pocklington's probation beyond its October 26, 2012 expiration date. We vacate the September 13, 2013 order revoking Pocklington's probation and sentencing him to six months in prison and two years of supervised release.[2]

**VACATED.**

---

[2] In light of our holding, we need not consider Pocklington's remaining arguments that his due process rights were violated, the government broke grand jury secrecy rules, and his sentence was substantively unreasonable.